[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 23, 2000
THOMAS K. KAHN
CLERK

No. 00-10173
Non-Argument Calendar

_____

D. C. Docket No. 97-00195-CV-3-HL-5

ARTISTIC ENTERTAINMENT, INC.,
a Georgia Corporation d.b.a. Teasers,
STEPHEN R. DEWBERRY,

Plaintiffs-Appellants,

versus

CITY OF WARNER ROBINS,
DONALD WALKER, Individually and in his
capacity as Mayor of the City of Warner Robins, et al.,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(August 23, 2000)**

Before BIRCH, CARNES and KRAVITCH, Circuit Judges.

PER CURIAM:

I. BACKGROUND AND PROCEDURAL HISTORY

In 1997, the City of Warner Robins enacted an ordinance regulating and requiring licenses for adult businesses ("the adult business ordinance").[1] Among other things, the ordinance established a licensing procedure for adult business and prohibited the sale and consumption of alcohol on the premises. The city amended its alcoholic beverage ordinance at the same time, bolstering the adult business ordinance by preventing adult businesses from obtaining liquor licenses.[2] The City Council approved these measures after an evidentiary hearing, and council members had an opportunity to review studies of the secondary effects of adult businesses in other cities as well as transcripts of testimony from numerous Georgia officials.

Artistic Entertainment, Inc., and Stephen Dewberry brought suit in state court against the City of Warner Robins and numerous officials in which they challenged the ordinances' constitutionality. Artistic Entertainment, Inc., is an establishment known as "Teasers" that features nude dancing; Stephen Dewberry holds the liquor license for Teasers. Defendants removed the case to case to federal court, which enjoined the implementation of the adult business measures.

---

[1] See Ordinance Regulating Adult Businesses (Mar. 3, 1997), in R1, Tab 1, Ex. A.

[2] See An Ordinance to Amend the Warner Robins Alcoholic Beverage Ordinance (Mar. 3, 1997), in R1, Tab 10, Ex. C.

Defendants appealed, and this court vacated the district court order, holding that it did not give adequate weight to the evidentiary basis offered by Warner Robins in support of its ordinances. The district court granted Defendants' motion for summary judgment and denied Plaintiffs' motion for reconsideration. Plaintiffs now appeal.

## II. DISCUSSION

Plaintiffs raise a number of First Amendment challenges to the Warner Robins ordinances on appeal. First, Plaintiffs argue the ordinances are content-based restrictions and should be subject to strict scrutiny rather than the intermediate standard of review applicable to content-neutral time, place, and manner restrictions. Second, Plaintiffs object to the district court's application of the test established in United States v. O'Brien, 391 U.S. 367, 88 S. Ct. 1673 (1968). We will consider these first two arguments together. Third, Plaintiffs contend that the adult business ordinance is unconstitutionally vague. Finally, Plaintiffs claim that the adult business ordinance's licensing provisions are an unconstitutional prior restraint on expression.

## A. Establishing and Applying the Proper Standard of Review

3

Regulations that restrict protected expression based on its content are subject to strict scrutiny. See City of Erie v. Pap's A.M., – U.S. –, –, 120 S. Ct. 1382, 1389 (2000) (plurality). On the other hand, regulations that target undesirable secondary effects of protected expression are deemed content-neutral, and courts review them with an intermediate level of scrutiny known as the O'Brien test. See id. Courts have long applied the O'Brien test to the regulation of adult entertainment. See, e.g., Renton v. Playtime Theatres, Inc, 475 U.S. 41, 47-49, 106 S. Ct. 925, 929-30 (1986); Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993, 996 (11th Cir. 1998). This circuit specifically has held that a prohibition on the sale of alcohol at adult entertainment venues, much like the ordinances at issue in this case, was content-neutral and subject to the O'Brien test. See Sammy's, 140 F.3d at 996.

Plaintiffs' attempts to evade the holding of Sammy's are unavailing. First, plaintiffs quote the deposition of one Warner Robins councilperson who disavowed any concern with crime associated with Teasers and acknowledged that he did not peruse any of the written materials given to the Council.[3] Courts are hesitant to inquire into legislators' motives, however, and we will "not strike down an otherwise constitutional statute on the basis of an alleged legislative illicit

---

[3] See Cambell Dep. at 4-5, in R1, Tab 31.

4

motive." O'Brien, 391 U.S. at 383, 88 S. Ct. at 1682.

Plaintiffs also claim that the adult business ordinance's definition of "adult business" impermissibly "turns on the characterization and the purpose of the message," Appellants' Br. at 15, because it exempts mainstream theaters where nudity and sexual expression are generally incidental to the purpose of performances.[4] The ordinance itself, however, states that its purpose is to reduce criminal activity and other "undesirable community conditions" associated with the combination of adult entertainment and drinking.[5] Limiting the ordinance's reach to those venues reasonably perceived to pose a risk of creating such side effects does not turn the ordinance into a content-based restriction.

Next, Plaintiffs argue that Warner Robins did not have sufficient evidentiary support for its conclusion that banning the sale and consumption of alcohol at adult businesses would actually curb crime or reduce the other "secondary effects" targeted by the ordinances. According to Plaintiffs, city council members had no personal experience or knowledge of crime patterns around Teasers, and the studies considered by the Council were conducted out-of-state and failed to find an explicit correlation between alcohol consumption, adult entertainment, and crime.

---

[4] See Ordinance Regulating Adult Businesses § 1.010(a)(4)(b)(1), in R1, Tab 1, Ex. A.

[5] See id. § 1.005.

The government need only have a "reasonable basis," however, for believing that its policy will indeed further a legitimate interest. See Sammy's, 140 F.3d at 997. The Sammy's court concluded that "the experience of other cities, studies done in other cities, caselaw reciting findings on the issue, as well as [the officials'] own wisdom and common sense" were sufficient. Id. Given the wealth of documentary evidence and testimony presented to it, we conclude that the Warner Robins City Council had an adequate basis for concluding that proscribing the sale and consumption of alcohol would reduce the crime and other social costs associated with adult businesses. See Renton, 475 U.S. at 51-52, 106 S. Ct. at 931.

B. Vagueness

Plaintiffs contend that the adult business ordinance's exemption for mainstream or traditional theaters renders its scope unconstitutionally vague. The pertinent provisions of the ordinance are:

> The definition of "adult entertainment business" shall not include traditional or mainstream theater which means a theater, movie theater, concert hall, museum, educational institution or similar establishment which regularly features live or other performances or showings which are not distinguished or characterized by an emphasis on the depiction, display, or description or the featuring of specified anatomical areas or specified sexual activities in that the depiction, display, description or featuring is incidental to the primary purpose of any performance. Performances and showings are regularly featured when they comprise

6

80% of all performances or showings.[6]

Plaintiffs fail to mention that the ordinance goes on to define a number of types of adult venues, such as "adult theater" and "adult entertainment cabaret" that *are* specifically included in the definition of adult businesses requiring a license to operate.[7]

Plaintiffs complain that the ordinance does not define "performances and showings," but they ask for a precision of vocabulary that is both impossible and unnecessary. See Grayned v. City of Rockford, 408 U.S. 104, 110, 92 S. Ct. 2294, 2300 (1972). It is clear what sort of venue the "mainstream theater" exemption would exclude from the ordinance's licensing requirements, and if a business owner is unsure, he may check the ordinance's description of specific, covered venues to determine if the ordinance applies.

Plaintiffs also complain that the ordinance's percentile standard, under which businesses must obtain a license if more than twenty percent of their performances feature specified sexual content that is more than incidentally related to their purpose, does not state how many performances or what time period will be factored into the equation. In fact, the "mainstream theater" exemption *limits*

---

[6] Ordinance Regulating Adult Businesses § 1.010(a)(4)(b)(1), in R1, Tab 1, Ex. A.

[7] See id. § 1.010(a)(4)(b)(2).

the opportunity for arbitrary and discriminatory enforcement of the adult business ordinance by establishing an objective standard. See Grayned, 408 U.S. at 113, 82 S. Ct. at 2302 (noting that it previously had found an ordinance overly vague in large part because enforcement was based on subjective criteria). The ordinance leaves the City some flexibility in measuring whether a venue falls under the "mainstream theater" exemption, but we are satisfied that the exemption's "80/20" standard provides adequate notice to business operators and an adequate restraint on arbitrary enforcement. See Mason v. Florida Bar, 208 F.3d 952, 959 (11th Cir. 2000).

Moreover, to the extent that the exemption for mainstream businesses is "intended to carve out non-obscene and therefore protected displays of nudity in artistically valuable . . . performances[, it] cannot be condemned for facial vagueness." Café 207, Inc. v. St. Johns County, 856 F. Supp. 641, 650 (M.D. Fla. 1994), aff'd, 66 F.3d 272 (11th Cir. 1995). "[B]ecause it is impractical if not impossible to precisely describe in words all of the types of nude performances falling within the protection of the First Amendment," id. at 649, we cannot expect such attempts to be especially eloquent.

C. Prior Restraint

8

Plaintiffs' final argument is that the adult business ordinance's licensing regime operates as an unconstitutional prior restraint on expression because it does not provide an adequate time limit on the City's review of license applications. See FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 225-30, 110 S. Ct. 596, 604-07 (1990) (discussing application of the prior restraint doctrine to nude dancing). The adult business ordinance requires the City Council to approve or deny a license application within forty-five days,[8] a time-frame this court held was reasonable in Redner v. Dean, 29 F.3d 1495, 1500 (11th Cir. 1994). The ordinance also dictates that the City Council "shall" approve an application if it complies with the ordinance.

The problem, Plaintiffs argue, arises if the City, because of bad faith or innocent bureaucratic delays, fails to act on an application before the deadline. In Redner, this court held that a mandatory time limit was "illusory, in that the Administrator's failure to comply with the time limit does not necessarily allow the applicant to begin engaging in the expressive activity for which the license is sought." 29 F.3d at 1500. The ordinance at issue in Redner did state that "the applicant may be permitted to begin operating . . . unless and until the County Administrator notifies the applicant of a denial of the application," id. at 1500-01,

---

[8] See Ordinance Regulating Adult Businesses § 1.060(a), in R1, Tab 1, Ex. A

9

but the court found that provision insufficient (and the ordinance unconstitutional) because it used the precatory word "may" rather than the mandatory word "shall." See id. at 1501. Without such a guaranty, this court held that the ordinance "risks the suppression of protected expression for an indefinite time period prior to any action on the part of the decisionmaker or any judicial determination." Id.

Warner Robins's ordinance does not include even the language deemed inadequate in Redner. The adult business ordinance is silent on an applicant's right to begin operating his business if the city fails to act on his application. In light of Redner's holding, which clearly controls here, we can only conclude that the Warner Robins adult business ordinance is facially violative of the First Amendment; although it imposes a deadline on the City to consider an adult business license application, it does not guaranty the adult business owner the right to begin expressive activities within a brief, fixed time frame.

III. CONCLUSION

We AFFIRM the district court's application of the O'Brien intermediate scrutiny standard to the challenged ordinances, as well as the district court's holding that the adult business ordinance was not unconstitutionally vague. In

light of our holding in <u>Redner</u>, however, we REVERSE the district court's holding that the adult business ordinance did not impose an unconstitutional prior restraint.