**RED–EYED JACK, INC., a Florida corporation, doing business as Pink Pony, Plaintiff,**

v.

**CITY OF DAYTONA BEACH, a Florida municipal corporation, Defendant.**

**The Boulevard Del, Inc., a Florida corporation, doing business as Molly Brown's, Plaintiff,**

v.

**City of Daytona Beach, a Florida municipal corporation, Defendant.**

Nos. 6:01CV429, 6:01CV761.

United States District Court, M.D. Florida, Orlando Division.

July 25, 2001.

David Scott Boardman, Frank de la Grana, P.A., Tampa, FL, Suzanne Elizabeth Coe, Law Office of Suzanne E. Coe, Atlanta, GA, Gary S. Edinger, Law Office of Gary Edinger, Gainesville, FL, for Plaintiff.

Marie Simone Hartman, City of Daytona Beach, Daytona Beach, FL, for Defendant.

## ORDER

ANTOON, District Judge.

In this consolidated case, two adult entertainment establishments, Red–Eyed

Jack, Inc., and The Boulevard Del, Inc., challenge a zoning scheme adopted by the City of Daytona Beach, Florida ("the City") that limits "adult theaters" to certain areas. Plaintiffs claim that Daytona Beach's Land Development Code fails to provide procedures that safeguard the constitutional rights of those applying to operate clubs where legal nude dancing is featured. Specifically, Plaintiffs contend that the Land Development Code lacks provisions requiring the City to grant or deny applications to operate adult theaters in a brief, specified time frame and establishing a deadline for the City to make a final decision such that applicants' rights to judicial review are not frustrated. Plaintiffs argue that such safeguards are necessary to ensure that any potential municipal agenda to silence the message of sexuality legally conveyed through nude dancing is not conveniently bolstered through a zoning process that places applicants in bureaucratic limbo. Until such procedural safeguards are in place, Plaintiffs seek to preliminarily enjoin Daytona Beach from enforcing Art. 11 § 4.1 and Art. 17 § 2.1 of the City's Land Development Code which apply to adult theaters.[1]

Because the City's zoning scheme fails to provide adequate procedural safeguards to ensure decisions are made expeditiously and are subject to prompt judicial review, this court finds that Daytona Beach's Land Development Code constitutes an unconstitutional "prior restraint" against Plaintiffs' right to convey a message of sexuality through nude dancing. Therefore, Daytona Beach is preliminarily enjoined from enforcing Art. 11 § 4.1 and Art. 17 § 2.1 of its Land Development Code against adult theaters.

## FACTUAL BACKGROUND

*Plaintiffs' Businesses and Daytona's Restrictions on Nude Dancing*

Red–Eyed Jack, Inc., doing business as "The Pink Pony," and Boulevard Del, Inc., doing business as "Molly Brown's," both operate adult-oriented dance clubs in Daytona Beach. In the early 1990's, the City enacted its Land Development Code, including Articles 11 § 4.1 and 17 § 2.1 permitting the operation of "adult theaters" but limiting that operation to certain zoning areas. The City also enacted City Code § 5–25 prohibiting nudity where alcohol is served. Adult theaters, as defined in the Land Development Code include live shows depicting nudity.[2] Adult theaters are permitted in the BA (business-auto) zone as well as in any other zone if a special use permit has first been issued by the City.

Plaintiffs, who operate outside a BA zone, allege that in an attempt to comply with the clothing requirements of both the zoning ordinance and alcohol/nudity code

---

**1.** Presently before the court is Red–Eyed Jack's Motion for Preliminary Injunction (Doc. 19, filed May 23, 2001) and supporting Memorandum (Doc. 21, filed May 23, 2001), to which Daytona Beach filed a Memorandum in Opposition (Doc. 23, filed June 5, 2001). Also before the court is Boulevard Del's Emergency Motion for Preliminary Injunction (Doc. 2, filed June 25, 2001) and supporting Memorandum (Doc. 3, filed June 25, 2001). Once the cases were consolidated, Daytona Beach filed a Supplemental Memorandum in Opposition to Plaintiffs' Motions for Preliminary Injunction (Doc. 39, July 10, 2001).

**2.** In Art. 2 § 3.1 of Daytona Beach's Land Development Code, "adult theater" is defined in pertinent part:

A use which exhibits any motion picture, exhibition, show, live show, representation, or other presentation which, in whole or in part, depicts nudity, sexual conduct, sexual excitement, or sadomasochistic abuse and is harmful to minors, all as defined in F.S. § 847.013, as it may be amended.

they required entertainers to wear "pasties" covering the areola (and immediate portions lateral and below) of the entertainers' breasts. Dancers would also wear bottoms know as "T-backs," French-cut bikinis, or Brazilian-cut bikinis. Plaintiffs claim that beginning in 2001, the City began regularly citing Plaintiffs for operating as "illegal adult theater[s]" in violation of the Land Development Code and for displaying too much flesh in violation of the alcohol/nudity restrictions in City Code § 5–25. In response, Plaintiffs allege that they began requiring dancers to wear traditional bikinis. Plaintiffs now seek to feature totally nude dancing, but they claim that under the Land Development Code there is no place in the City that this can be accomplished free of the City's prior restraint of expression.

*Daytona Beach's Land Development Code*

The paramount challenge to Daytona Beach's nude dancing restrictions focuses on the constitutionality of the Land Development Code. Under this zoning scheme, adult theaters are allowed either: (1) as a "conditional use" within "BA districts"; or (2) as a "special use" in other zoning districts.

*Conditional Uses*

The substantive requirements for issuance of conditional use approval for adult theaters in BA districts are set forth in Art. 11 § 4.1 of the City's Land Development Code.[3] Generally, this provision of the Land Development Code permits the operation of adult theaters in BA zones if certain conditions (e.g., minimum distances between the adult theaters and other establishments, color of the building, and blackened windows) are satisfied. In addition, operating as a conditional use requires approval from Daytona Beach's Technical Review Committee. The City contends that Plaintiffs and others may

operate adult theaters as a matter of right under this provision notwithstanding the conditions. However, the procedure for obtaining approval from the Technical Review Committee set forth in Art. 4 § 7 provides in part:

**Sec. 7.2. Procedure**

(a) Requests for conditional uses shall be submitted in accordance with the general application requirements and procedures, concurrent with a site plan.

(b) Conditional use requests within a redevelopment district shall be reviewed and approved by the district's redevelopment design review board. The board's decision shall be final administrative action.

(c) All other conditional use requests shall be subject to review and approval by the technical review committee, in accordance with the bylaws and procedures established by the technical review committee. The decision of the technical review committee shall be final administrative action.

**Sec. 7.3. Criteria**

A conditional use shall be approved only where the conditions established for the use are fully and clearly met. The reviewing authority may grant modifications to the conditions if the development will clearly achieve the purpose and intent of the conditions.

The Land Development Code further provides that where the Technical Review Committee's decision is final, "an appeal may be heard by the planning board only to determine whether the TRC [Technical Review Committee] has correctly interpreted and applied these regulations." Art. 3 § 9.3(c). Importantly, there are no time limitations for a decision by the Tech-

---

**3.** See Appendix A.

nical Review Committee or the Planning Board.

*Special Uses*

As noted above, the Land Development Code does not preclude the issuance of a special use approval allowing the operation of adult theaters in zones other than a BA zone. Adult theaters may also operate as a "special use" pursuant to Art. 17 § 2.1.[4] The procedures for obtaining approval of a special use operation are set forth in Art. 4 § 6.2 and require, in part, public hearings by the Planning Board and City Commissioner. Further, Art. 4 § 1.3(b) provides, "Where planning board approval is required, upon acceptance of an application as complete the request shall be placed on the next available agenda for consideration by the board, but no sooner than 38 calendar days from the date of submittal." Art. 3 § 1.2 provides the following general procedure for the Planning Board and City Commission:

**Sec. 1.2. Review of land development orders and regulations.**

(a) Except where specifically provided otherwise, all land development orders and regulations requiring approval of the city commission shall first be reviewed by the planning board.

(b) Where the planning board recommends denial of a request, it shall not be heard by the city commission unless the applicant requests review in writing submitted within 5 days after the decision of the planning board.

(c) Except where specifically provided otherwise by the planning board conditions of approval, requests shall be heard by the city commission within 60 days of planning board review and final action, or the request shall be referred back to the planning board for reconsideration.

4. See Appendix B.

Although Section 1.2 provides for review by the City Commission of a Planning Board denial of an application to operate an adult theater as a special use, there is no requirement of a minimum time period for a decision by the City Commission.

## PRELIMINARY INJUNCTION STANDARD

 In order to obtain preliminary injunctive relief, a plaintiff must show: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless an injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

## ANALYSIS

*Daytona Beach's Land Development Code is Constitutionally Deficient*

 The court recognizes Daytona Beach's legitimate interest in curtailing the secondary effects often associated with adult-oriented clubs such as increased crime, decreased property values, and neighborhood blight. However, the Supreme Court has consistently held that nude dancing is a legal form of expressive conduct "within the outer perimeters of the First Amendment." *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 566, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991); *see also City of Erie v. Pap's A.M.*, 529 U.S. 277, 289, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000). With this in mind, a close review of the City's restrictions on nude dancing, as set forth in the City's Land Development Code, reveals the City's failure to ensure that citizens who seek approval to exercise

this legal form of expression will be given a timely response from the City and an opportunity to seek judicial review. Thus, Daytona Beach's Land Development Code, as applied to adult theaters, is an unconstitutional "prior restraint" on Plaintiffs' free speech.

The doctrine prohibiting unconstitutional prior restraint is grounded in controlling Supreme Court and Eleventh Circuit decisions. In *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), proprietors of "sexually oriented businesses" ("SOBs") argued that Dallas's licensing scheme for adult entertainment permits failed to set a time limit within which the licensing authority must issue a license and therefore created the likelihood of arbitrary denials and the concomitant suppression of speech. The *FW/PBS* Court explained:

" 'It is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official-as by requiring a permit or license which may be granted or withheld in the discretion of such official-is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' " [*Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969) (quoting *Staub v. City of Baxley*, 355 U.S. 313, 322, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958)) ].

*Id.* at 226, 110 S.Ct. 596. The failure to provide minimum time requirements within which decisions must be made by municipal officials regarding applications for operation of an expressive activity vests in those officials the power to exercise prior restraint.

In *FW/PBS*, the Supreme Court evaluated whether the Dallas licensing scheme had procedural safeguards akin to those found necessary by the Court in *Freedman v. Maryland*, 380 U.S. 51, 56–57, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965), in which a Maryland motion picture censorship statute was held unconstitutional. The applicable safeguards were held to be: (1) the licensor must make the decision whether to issue the license within a specified brief period during which the status quo is maintained; and (2) prompt judicial review must be available. The Court stated:

The failure to confine the time within which the licensor must make a decision "contains the same vice as a statute delegating excessive administrative discretion," *Freedman* [at 56–57, 85 S.Ct. 734]. Where the licensor has unlimited time within which to issue a license, the risk of arbitrary suppression is as great as the provision of unbridled discretion. A scheme that fails to set reasonable time limits on the decisionmaker creates the risk of indefinitely suppressing permissible speech.

*FW/PBS*, 493 U.S. at 227, 110 S.Ct. 596. Failing to find that *Freedman* procedural safeguards existed, the *FW/PBS* Court found Dallas's ordinance regulating SOBs to be unconstitutional.

The Eleventh Circuit has also repeatedly held that municipal procedures for obtaining approval to operate strip clubs must contain more than scanty procedural safeguards. Ordinances that have failed to provide specified, brief time limits on the decision makers and failed to entitle the applicant to prompt judicial review of adverse decisions have been held unconstitutional as prior restraints on First Amendment freedoms. *See Artistic Entm't, Inc. v. City of Warner Robins*, 223 F.3d 1306 (11th Cir.2000) (holding that a city ordinance prohibiting nudity at establishments that serve alcohol lacked procedural safeguards for applicants and was an unconstitutional prior restraint on expression);

*Lady J. Lingerie v. City of Jacksonville,* 176 F.3d 1358 (11th Cir.1999) (holding that a zoning ordinance was unconstitutional as applied to adult entertainment establishments because it required applicants to obtain an exception to operate through a process that failed to provide procedural safeguards), *cert. denied,* 529 U.S. 1053, 120 S.Ct. 1554, 146 L.Ed.2d 459 (2000); *Redner v. Dean,* 29 F.3d 1495, 1501 (11th Cir.1994) (holding that a county adult entertainment licensing scheme was an unconstitutional prior restraint as the ordinance "fail[ed] to impose reasonable time limits on the decisionmaker, as required by *Freedman* and *FW/PBS*" in part because the ordinance included an appeal process that created the risk that "protected expression will be restrained for an indefinite time period prior to any form of judicial review").

The Eleventh Circuit's review of the City of Jacksonville, Florida's adult entertainment zoning scheme in *Lady J. Lingerie* is particularly instructive here, as Daytona Beach's adult entertainment zoning procedures are similar to those found to be inadequate in that case. Like Daytona Beach, Jacksonville permitted adult establishments in two types of zoning areas. Although in Jacksonville adult entertainment was permitted "as of right" in one of these zones, nearly all of the available sites were located in the other zone, where an applicant was required to obtain an exception to operate. The court found that the process of obtaining such an exception "persuades [the court] to treat it like a license." *Lady J. Lingerie,* 176 F.3d at 1362. The Eleventh Circuit went on to hold:

> As a form of prior restraint, licensing schemes commonly contain two defects: discretion and the opportunity for delay. An ordinance that gives public officials the power to decide whether to permit expressive activity must contain precise and objective criteria on which they

must make their decisions; an ordinance that gives too much discretion to public officials is invalid. *See Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969). Licensing ordinances must also require prompt decisions. An ordinance that permits public officials to effectively deny an application by sitting on it indefinitely is also invalid. *See Freedman v. Maryland,* 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965).

*Lady J. Lingerie,* 176 F.3d at 1362–63. The court found the Jacksonville ordinance defective on both grounds; it gave impermissible discretion to a municipal official and it allowed indefinite delay.

*Lady J. Lingerie* is further instructive because—like the challenged zoning procedures in Daytona Beach—the zoning procedures held unconstitutional in Jacksonville involved "run-of-the-mill" zoning requirements that applied to all applicants for zoning approval—not just adult businesses. In Jacksonville, these run-of-the-mill considerations included: "compatibility with contiguous uses, environmental impact, effect of pedestrian traffic, and so on." *Id.* at 1362. The problem with these requirements was that they empowered the zoning board to "covertly discriminate against adult entertainment establishments under the guise of general 'compatibility' or 'environmental' considerations." *Id.* Hence, such facially objective zoning requirements, without procedural safeguards expressly setting forth the time frame for decisions and providing for prompt judicial review, fail to pass constitutional muster. With respect to the time frame for decisions, the court acknowledged Jacksonville's requirement that the zoning board hold a public hearing within 63 days after a business applied for an exception. The court, however, found this deadline meaningless because the Code did not require that a decision be made

within this 63 days or at any time. Further, the court did not find that a provision in the Code permitting applicants to conditionally open after 45 days while waiting for a decision was sufficient to remedy the Code's inadequacy. The court explained: "A conditional exception is no exception at all. A business can scarcely afford to operate in limbo, not knowing whether the City will shut it down the next day or not." *Id.* at 1363.

Applying the Supreme Court and Eleventh Circuit decisions discussed above, this court finds that Daytona Beach's "special use" and "conditional use" zoning restrictions on adult theaters fail to withstand First Amendment scrutiny. With respect to obtaining approval to operate a club featuring nude dancing as a special use, the requirements in Art. 4 § 6.2 of the Land Development Code for a public hearing by the Planning Board and City Commissioner are constitutionally deficient because the provisions fail to mandate a specified, brief time for a decision to be made. The City—apparently conceding that the process for obtaining approval to operate adult clubs as a special use is flawed—argues that Plaintiffs' First Amendment rights are nevertheless preserved because nude dancing establishments may be approved as a "conditional use" in a BA district.

In evaluating the Land Development Code's requirements for operating an "adult theater" as a conditional use in Art. 11 § 4.1 in conjunction with the procedural requirements in Art. 4 § 7, this court finds that the process for obtaining conditional use approval is similarly flawed. Theoretically, the Technical Review Committee referred to in Art. 4 § 7 can hold an application for as long as it desires. Thus, even if an applicant unquestionably meets all the distance requirements set forth in Art. 11 § 4.1, the application may be held in bureaucratic limbo. Moreover, Art. 11 § 4.1(e) prohibiting "garish colors or such other fashion as will effectuate the same purpose as a sign" calls for a subjective analysis that may potentially be used as a front to restrict Plaintiffs' First Amendment rights.

Further, if an application is denied, the applicant may appeal to the Planning Board pursuant to Art. 3 § 9.3(c). Under the Land Development Code, the planning board "may" [or may not] hear the appeal and there is no set time frame in which a hearing or review must be conducted or a decision rendered. As there is no assurance within the Land Development Code that the City's final determination will not be delayed indefinitely and there is no clear indication when an applicant has exhausted administrative remedies, the Land Development Code fails to set forth the appropriate time at which an applicant may request that a court review the City's decision. Thus, as the Land Development Code could potentially delay judicial review indefinitely, the Land Development Code constitutes a prior restraint on applicants' First Amendment freedoms.

This court acknowledges that the City appears to have a legitimate objective in curtailing the negative secondary impacts of adult-oriented businesses on the City's neighborhoods. Nevertheless, like Dallas's SOB licensing scheme disapproved in *FW/PBS* and Jacksonville's adult entertainment zoning scheme disapproved in *Lady J. Lingerie,* Daytona Beach's Land Development Code does not have the requisite procedural safeguards to ensure that decisions are made in a specified, brief time and are subject to prompt judicial review. These safeguards are necessary to ensure that adult-oriented expression protected by the First Amendment is not prohibited due to its sexual message under the guise of curtailing alleged secondary impacts.

It is noted that the present case is distinguishable from the Supreme Court's decision in *City of Erie v. Pap's A.M.*, 529 U.S. 277, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000), in which an Erie, Pennsylvania ordinance prohibiting nudity was upheld as constitutional. The Court held that the Erie ordinance regulated conduct alone, was content-neutral, and was not directed at restricting nude dancing which conveys an "erotic message" protected by the First Amendment. *Pap's A.M.*, 529 U.S. at 289–90, 120 S.Ct. 1382. In contrast, Daytona Beach's Land Development Code directly restricts the operation of "adult *theaters* " that seek to convey a message of sexuality through nude dancing. Hence, *Pap's A.M.* does not provide a justification to uphold Daytona Beach's Land Development Code as applied to adult theaters.

 Based on the above findings as to the applicability of the prior restraint doctrine, the court finds that Plaintiffs are entitled to preliminary injunctive relief enjoining Daytona Beach from enforcing the Land Development Code with respect to adult theaters. Each element for granting preliminary relief is present. First, for the reasons set forth above, there is a substantial likelihood that Plaintiffs will prevail with respect to their challenge to Daytona Beach's Land Development Code. Second, the Supreme Court has held that even minimal infringements upon First Amendment protections constitute "irreparable harm." *Elrod v. Burns*, 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). Third, in weighing Plaintiffs' injury against the potential damage that Daytona Beach may suffer from the injunction, the court finds that no harm can come to the City by being prohibited from enforcing an unconstitutional zoning scheme. Finally, with respect to the fourth preliminary injunction factor, the court finds that the public interest is championed by judicial protections of legal speech—even when such speech is not applauded by the public at large. Accordingly, Daytona Beach is preliminarily enjoined from enforcing Art. 11 § 4.1 and Art. 17 § 2.1 of its Land Development Code against adult theaters.

*Daytona Beach's Alleged Police Practices*

 In its preliminary injunction motion, Boulevard Del seeks to enjoin the City police officers from arresting Boulevard Del's manager for violating the alcohol/nudity prohibitions in City Code § 5–25, when, in fact, the manager had no opportunity to observe or control the alleged violations. Addressing a similar practice in Jacksonville, the Eleventh Circuit in *Lady J. Lingerie* held that arresting managers on a respondeat superior theory without proof of their personal blameworthiness is a violation of the managers' due process rights. *Lady J. Lingerie*, 176 F.3d at 1367. In the instant case, Daytona Beach denied during oral argument that City police officers were arresting club managers on a respondeat superior theory of liability, yet the City failed to rebut the allegation by affidavit or pleading. Therefore, in accordance with *Lady J. Lingerie* this court orders a preliminary injunction restraining Daytona Beach from arresting managers of adult theaters where there is no probable cause that the managers had notice of an alleged violation of the law or control over the offending party.

### CONCLUSION

Based on the above findings, it is **ORDERED** and **ADJUDICATED** as follows:

Red–Eyed Jack's Motion for Preliminary Injunction (Doc. 19, filed May 23, 2001) is **GRANTED**, and Boulevard Del's Emergency Motion for Preliminary Injunction (Doc. 2, filed June 25, 2001) is also **GRANTED**. Daytona Beach is preliminarily enjoined from enforcing Art. 11 § 4.1

and Art. 17 § 2.1 of its Land Development Code as applied to "adult theaters."[5] Furthermore, Daytona Beach, its agents and employees, and all others acting in concert with Daytona Beach who receive actual notice of this Order are preliminarily enjoined from arresting managers of adult theaters pursuant to City Code § 5–25 unless there is probable cause that the managers had notice of an alleged violation and control over the offending party.

### APPENDIX A

Article 11 § 4.1 of Daytona Beach's Land Development Code states:

**Sec. 4.1. Adult bookstores and adult theaters.**

Adult bookstores and adult theaters are permitted as a conditional use in BA districts. The purpose of the conditions is to reduce the adverse impacts of adult bookstores and adult theaters upon neighborhoods by avoiding the concentration of uses which cause or intensify physical and social blight; improving visual appearance of adult uses; reducing negative impacts of adult uses upon other business uses, neighborhood property values, residential areas, and public and semipublic uses; insuring that adult uses do not impede redevelopment and neighborhood revitalization efforts; and avoiding uses in heavily used pedestrian areas. The following conditions must be met:

(a) It shall be unlawful to locate any adult bookstore or adult theater within 400 feet of any residential, R–RUD, T–1, or T–2 district.

(b) It shall be unlawful to locate any adult bookstore or adult theater within 1,000 feet of any other adult theater or adult bookstore.

(c) It shall be unlawful to locate any adult bookstore or adult theater within 400 feet of any church, school, public park, or playground, or any other public or semipublic place of assembly where large numbers of minors regularly travel or congregate.

(d) Distances shall be measured from property line to property line, without regard to the route of normal travel.

(e) Buildings shall not be painted in garish colors or such other fashion as will effectuate the same purpose as a sign. All windows, doors, and other apertures shall be blacked or otherwise obstructed so as to prevent viewing of the interior of the establishment from without.

### APPENDIX B

Article 17 § 2.1 of Daytona Beach's Land Development Code states:

**Sec. 2.1. Adult bookstores and adult theaters.**

(a) Special use in any district. Adult bookstores and adult theaters may be permitted in any district, or in a BA district without meeting all of the conditions applicable in the district, by approval of a special use finding that:

(1) The location of the use will not be contrary to the public interest and that the spirit and intent of the con-

---

**5.** The court notes that on July 16, 2001, Daytona Beach filed a Notice of Pending Amendment to Land Development Code which is Subject of Plaintiffs' Motion for Preliminary Injunction (Doc. 41). As Plaintiffs seek to preliminarily enjoin Defendant, delaying adjudication of Plaintiffs' present motions would be inappropriate. Further, the court makes no finding as to whether Daytona Beach's proposed amendment to the Land Development Code includes sufficient constitutional safeguards.

ditions in article 11, section 4, LDC will be met; and

(2) It will not enlarge or encourage the development or further development of a blighted area; and

(3) It will not be contrary to any program of neighborhood conservation, or interfere with any program of urban revitalization.