[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 28, 2003
THOMAS K. KAHN
CLERK

No. 02-10216

_____

D. C. Docket No. 97-00195 CV-4-HL-5

ARTISTIC ENTERTAINMENT,
INC., a Georgia Corporation d.b.a
Teasers, STEPHEN R. DEWBERRY,

                                                  Plaintiffs-Appellants,

        versus

CITY OF WARNER ROBINS,
DONALD WALKER, Individually
and in his capacity as Mayor of the
City of Warner Robins, et al.,

                                                  Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

**(May 28, 2003)**

Before EDMONDSON, Chief Judge, WILSON, Circuit Judge, and NELSON[*],
District Judge.

_____

[*]Honorable Edwin L. Nelson, United States District Judge for the Northern District of
Alabama, sitting by designation. This case is being decided by a quorum due to the death of Judge
Nelson on 17 May 2003. See 28 U.S.C. § 46(d).

PER CURIAM:

In 1997 the City of Warner Robins, Georgia, adopted two ordinances aimed at prohibiting the consumption of alcoholic beverages at adult entertainment facilities. The first ordinance, Ordinance 18-97, titled "An Ordinance Regulating Adult Businesses" (the "Adult Ordinance"), among other things, established a licensing scheme for operation of an "adult business" within city limits and prohibited the sale and consumption of alcoholic beverages on the premises of an adult business.[1] The second ordinance, Ordinance 19-97, titled "An Ordinance to Amend the Warner Robins Alcoholic Beverage Ordinance" ("Alcohol Ordinance"), amended the City's alcohol licensing laws to prohibit the selling, serving, or dispensation of alcoholic beverages by any "adult business."[2] The City Council approved the ordinances after an evidentiary hearing in which council members had an opportunity to review studies and testimony of state officials regarding the combined effects of alcohol and adult entertainment.

The plaintiffs/appellants, who own and operate an adult entertainment

---

[1] The Adult Ordinance also specified that adult businesses (1) could not be located within 1,000 ft. of a school, church, licensed child care center, public park, or property zoned or used for residential purposes; (2) could not be within 1,000 ft. of another location licensed as an Adult Business or an Alcohol Merchant; and (3) could not be located on less than one acre of land containing less than 100 ft. of road frontage. (1 R. at Tab 10, Ex. B.)

[2] 1 R. at Tab 10, Ex. C.

2

establishment that sells alcohol and offers nude dancing in the City, brought this action to challenge both ordinances on constitutional grounds.

I.    PROCEDURAL HISTORY

This is the third appeal in this litigation. Initially, this court vacated the district court's order enjoining the implementation of the ordinances, finding that it had not accorded sufficient weight to the evidentiary basis that supported adoption of the ordinances. In the second appeal, we concluded the Adult Ordinance and the Alcohol Ordinance were content-neutral and subject to the intermediate level of scrutiny established by United States v. O'Brien, 391 U.S. 367, 88 S. Ct. 1673, 20 L. Ed. 2d 672 (1968), and that the Warner Robins City Council had an adequate basis for concluding that a proscription on the sale and consumption of alcohol at adult businesses would reduce the crime and other social costs associated with those businesses. Artistic Entm't, Inc. v. City of Warner Robins, 223 F.3d 1306, 1308-10 (11th Cir. 2000). We also concluded that the Adult Ordinance was not unconstitutionally vague, but that it did operate as an unconstitutional prior restraint on expression because it did not provide for an applicant's right to begin operating his business within a reasonable time if the City failed to act on his application as

required by Redner v. Dean, 29 F.3d 1495 (11th Cir. 1994). Artistic Entm't, 223 F.3d at 1310-11.

After remand, the City enacted Ordinance 57-00, entitled "An Ordinance to Amend the Ordinance Regulating Adult Businesses" ("Amending Ordinance").[3] The Amending Ordinance re-adopted the Adult Ordinance in all respects, but additionally provides in pertinent part:

> If the City Council has not approved or disapproved an application for a license within forty-five (45) days from the date such application was received by the City Clerk, then on the expiration of the forty-fifth (45th) day: (1) the application shall be approved and the City Clerk shall immediately issue the license for which application was made, and (2) the applicant shall have the right to begin operating in the manner allowed by the license for which application was made.

In subsequent proceedings, the district court found Artistic was not entitled to damages for the period during which the City required it to refrain from offering alcoholic beverages in conjunction with nude dancing.[4] Agreeing with Artistic that the entire Adult Ordinance was unenforceable, but concluding the Alcohol Ordinance was legitimately enforced, the district court then invited the parties to file

---

[3]2 R. at Tab 72, Ex. B.

[4]The City initially agreed that neither ordinance would be enforced while the case was being litigated. However, on December 16, 1999, after the district court granted the City summary judgment on all counts, the City began enforcing the ordinances against Artistic until August 24, 2000, the day after we held that the Adult Ordinance operated as an unconstitutional prior restraint on expression. Since then Artistic has offered both alcoholic beverages and nude dancing.

4

motions "related to the issue of whether the prior restraint problems with the Adult Ordinance have been cured" by the adoption of the Amending Ordinance.[5]

The City filed a motion for summary judgment arguing that the Amending Ordinance had cured the prior restraint problem. Artistic filed a motion to reopen discovery and a motion to amend its complaint, contending: the Amending Ordinance did not cure the prior restraint problem; new evidence would show the Amending Ordinance lacked any evidentiary basis as required by the United States and Georgia constitutions; and, the Amending Ordinance was not enacted in accordance with the notice and hearing procedures required by Georgia zoning laws.[6] In its response to the City's motion for summary judgment, Artistic reiterated its arguments that the Amending Ordinance failed to cure the prior restraint problem and violated the Georgia zoning laws.[7] Artistic invited the district court to consider the summary judgment facts and legal argument in conjunction with its motion to supplement, noting "the issues raised and argued in the motions overlap to a large degree."[8]

---

[5]2 R. at Tabs 65-68.

[6]R2 R. at Tab 72.

[7]2 R. at Tab 74.

[8]2 R. at Tab 78, p. 1.

5

In the context of these pending motions, and after accepting evidence in support of Artistic's motion, the district court granted Artistic's motion to file an amended complaint[9] but, finding the Amending Ordinance was valid, also granted the City's motion for summary judgment on all claims. Finding that additional discovery would not be helpful, the district court denied Artistic's request to reopen discovery. This appeal followed.

## II. ISSUES

Artistic argues the district court granted summary judgment <u>sua sponte</u> on the supplemented claims, without providing notice or an opportunity for Artistic to come forward with evidence to show that the supplemented claims created a genuine issue of material fact. Artistic also argues the district court improperly denied its request to reopen discovery. Artistic further argues the Amending Ordinance is invalid because: (1) the unconstitutional portions of the Adult Ordinance were not severable, so that the entire Adult Ordinance was void, and

---

[9]Artistic had argued that the validity of the Amending Ordinance was not properly before the court without an amendment to the pleadings. The City acquiesced to the amendment, but contended it was, nevertheless, entitled to summary judgment regarding the validity of the Amending Ordinance.

could not be adopted by reference in the Amending Ordinance; (2) the adoption of the Amending Ordinance violated Georgia's Zoning Procedures Law; and (3) adoption of the Amending Ordinance violated the First Amendment because the City lacked a proper evidentiary basis to support its passage. Finally, Artistic argues the district court erred in holding the Alcohol Ordinance enforceable even though portions of it adopt by reference definitions contained in the void Adult Ordinance.

III.    DISCUSSION

A.    The Grant of Summary Judgment

We have previously emphasized that Rule 56's notice provision "is not an unimportant technicality, but a vital procedural safeguard . . . . [T]he notice provision ensures that litigants will have at least ten days in which to formulate and prepare their best opposition to an impending assault upon the continued viability of their claim or defense." Massey v. Congress Life Ins. Co., 116 F.3d 1414, 1417 (11th Cir. 1997) (citations omitted). We have, however, distinguished between sua sponte grants of summary judgment in cases involving purely legal questions based

on complete evidentiary records, and cases involving factual disputes where the non-moving party has not been afforded an adequate opportunity to develop the record.[10] For instance, in Massey, in reversing the district court's sua sponte grant of summary judgment, we distinguished Black Warrior Electric Membership Corp. v. Mississippi Power Co., 413 F.2d 1221 (5th Cir. 1969), emphasizing that Black Warrior involved a sua sponte grant of summary judgment on a purely legal issue, while the issue upon which the district court granted summary judgment in Massey involved a question of fact which the non-moving party had not been afforded an adequate opportunity to develop. Massey, 116 F.3d at 1418; Black Warrior Electric, 413 F.2d at 1226. Likewise, in Burton v. City of Belle Glade, 178 F.3d 1175 (11th Cir. 1999), we made it clear that where a legal issue has been fully developed, and the evidentiary record is complete, summary judgment is entirely

---

[10]Other circuits reviewing sua sponte grants of summary judgment have been similarly concerned with the completeness of the evidentiary record before the trial court. In Ramsey v. Coughlin, 94 F.3d 71 (2nd Cir. 1996), the court reversed a district court's grant of summary judgment sua sponte in favor of the defendant because "an orderly and reviewable record" did not exist. Id. at 74. However, the court made it clear that:

> Where it appears clearly upon the record that all of the evidentiary materials that a party might submit in response to a motion for summary judgment are before the court, a sua sponte grant of summary judgment against that party may be appropriate if those materials show no material dispute of fact exists and that the other party is entitled to judgment as a matter of law.

Id.

appropriate even if no formal notice has been provided.[11]  Id. at 1204.

In the instant case, we conclude that the district court's grant of summary judgment was proper.  In doing so, we do not retreat from our previous admonition that summary judgment should be granted sua sponte only in those circumstances in which the dismissed claims have been fully developed in the evidentiary record and the non-moving party has received adequate notice.  Here, the district court's April 16, 2001, order made it clear that both parties were expected to come forward with motions "related to" the constitutionality of the Adult Ordinance following the adoption of the Amending Ordinance.  Furthermore, although the district court had no formal motion for summary judgment on the new claims before it, and did not formally notify Artistic that it was considering the new claims in the summary

---

[11]Other circuits have similarly held that formal notice is not always required. E.g. Bridgeway Corp. v. Citibank, 201 F.3d 134, 140 (2nd Cir. 2000) (holding that the district court properly granted a defendant summary judgment sua sponte even though the plaintiff had not been given any notice because "nothing in the record [indicated] that Bridgeway was procedurally prejudiced by the district court's failure to give notice that it was considering a sua sponte grant of summary judgment in favor of Citibank" on a legal issue); Bramble v. Am. Postal Workers Union, 135 F.3d 21, 27 (1st Cir. 1998) (holding that lack of notice prior to a grant of summary judgment sua sponte does not warrant reversal where nonmovant's brief showed that he did have adequate notice of the legal theory used by the court to grant summary judgment); see also Ross v. Univ. of Tex., 139 F.3d 521, 527 (5th Cir. 1998) (holding that lack of notice before granting summary judgment sua sponte does not warrant reversal where it was clear that nonmovant's claim had no basis); English v. Cowell, 10 F.3d 434, 437 (7th Cir. 1993) (noting that notice would not be required prior to granting summary judgment sua sponte where the nonmovant's claim is frivolous).  But see Lopez-Carrasquillo v. Rubianes, 230 F.3d 409, 411-12 (1st Cir. 2000) (holding that it was error for a district court to simultaneously permit the plaintiff to amend a complaint to reinstate previously dismissed defendants and grant those reinstated defendants summary judgment sua sponte on the added claims).

judgment proceedings, the merits of the claims were fully briefed and evidence was accepted and considered in conjunction with the simultaneous motion to amend. Under these circumstances, Artistic had sufficient notice that the court might rule on the supplemented claims. Furthermore, even if the district court had formally told Artistic that the new claims would be addressed in the summary judgment proceedings, we are convinced that the outcome would not have been different. As discussed below, the district court had all the information necessary to rule on the legal issues, and Artistic raised no genuine question of material fact that would have precluded summary judgment.

B.     The Motion To Reopen Discovery

We review district court decisions concerning discovery only for an abuse of discretion. Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999). Generally, a motion for additional discovery is properly denied where a significant amount of discovery has already been obtained and further discovery would not be helpful. Avirgan v. Hull, 932 F.2d 1572, 1580-81 (11th Cir. 1991). Artistic argues the district court erred by not granting its motion to reopen discovery because further discovery would show that the evidentiary basis on which the Amending

10

Ordinance was passed was no longer reasonable, that the Amending Ordinance was adopted in violation of Georgia's Zoning Procedures Law, that the Amending Ordinance leaves an inadequate number of adult businesses to locate within the City of Warner Robins, and that the Amending Ordinance uniquely and adversely affects Artistic.

The district court held further discovery would not be helpful primarily because all of these issues could have been addressed much earlier in the litigation. Because the Amending Ordinance merely readopted the same language concerning adult businesses contained in the original Adult Ordinance, Artistic could have challenged the zoning aspects of the Ordinance when the complaint was first filed in 1997. Moreover, the studies Artistic wished to introduce were provided to the City Council when the Amending Ordinance was adopted. Therefore, whether the council properly considered the studies is a question of law that further discovery would not resolve. Under these circumstances, the district court did not abuse its discretion in finding that further discovery would not be helpful.

C. The Validity of the Amending Ordinance

We review a district court's grant of summary judgment de novo, applying the

same standard as the district court, and reviewing all facts and reasonable inferences in a light most favorable to the nonmoving party. Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999). Summary judgment is proper when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

When we last reviewed this matter, we decided the Adult Ordinance facially violated the First Amendment because it did not "guarantee the adult business owner the right to begin expressive activities within a brief, fixed time frame." Artistic Entm't, 223 F.3d at 1311. The Adult Ordinance, as readopted by the Amending Ordinance, now requires the City to act on an application within 45 days and provides that if the City fails to act within that time frame, the application will be automatically approved, and "the applicant shall have the right to begin operating in the manner allowed by the license for which application was made." The additional language is consistent with our holding in Redner v. Dean, 29 F.3d 1495, 1500-01 (11th Cir. 1994), where we decided that a time limit of 45 days in which the government must act on a similar license application avoided any prior restraint problem only if provision is made to allow, within a reasonable time, the applicant to engage in the activity for which license is sought even absent action on the license application.

Artistic argues this court's previous holding rendered the entire Adult Ordinance void, so that the City could not cure the Adult Ordinance through adoption of the Amending Ordinance. Rather, Artistic contends the City's only option was to enact a new ordinance, complying with Georgia's Zoning Procedures Law and conducting a new evidentiary hearing. On the other hand, the City argues that the presence of a severability clause in the Adult Ordinance[12] saved the portion of the Adult Ordinance that was re-adopted through the Amending Ordinance. The City also contends the Georgia Zoning Procedures Law is inapplicable to the ordinances at issue, and that a new evidentiary hearing was not required.

### 1. The Severability of the Adult Ordinance

We apply Georgia law to determine what portion of a Georgia statute, if any, survives due to a severability clause, when a portion of that statute is judicially invalidated. See Smith v. Butterworth, 866 F.2d 1318 (11th Cir. 1989) (applying Florida law to determine the effect of a severability clause in a Florida statute). In

---

[12]The severability clause states "If any section, subsection, subdivision, paragraph, sentence, clause or phrase in this ordinance . . . is for any reason held to be unconstitutional or invalid or ineffective . . . such decision shall not affect the validity or effectiveness of the remaining portions of this ordinance." (1 R. at Tab 10, Ex. B, § 1.170).

Chambers v. Peach County, 492 S.E.2d 191, 193 (Ga. 1997), the Georgia Supreme Court held that a severability clause in an unconstitutional county ordinance created "a presumption that the county intended for invalid provisions not mutually dependent on other provisions to be severed, leaving the remainder of the ordinance intact." We must not, however, "give to the statute an effect altogether different from that sought by it when considered as a whole." City Council of Augusta v. Mangelly, 254 S.E.2d 315, 320 (Ga. 1979) (Hill, J., dissenting) (superseded by statute as noted in Nielubowicz v. Chatham County, 312 S.E.2d 802, 803 n.1 (Ga. 1984)). Accordingly, under Georgia law, we must determine whether the invalid provisions of the Adult Ordinance are mutually dependent upon any other portions of the Adult Ordinance, while at the same time preserving the original purpose of the ordinance.

An examination of the Adult Ordinance reveals that the entire ordinance is designed to regulate adult businesses through a licensing regime. The ordinance's substantive requirements are closely intertwined with the licensing procedure and the two cannot be separated without disrupting the obvious purpose of the ordinance. Therefore, although the Adult Ordinance contains a severability clause, we conclude that no part of the Adult Ordinance survived our decision in Artistic Entertainment, because the entire ordinance is dependent upon a valid licensing

14

regime.

Because no part of the Adult Ordinance survived our previous decision, the Amending Ordinance is valid only if it stands as an entirely "new" ordinance. Artistic argues that the Amending Ordinance is not a valid "new" ordinance because it was not enacted in accordance with Georgia's Zoning Procedures Law and violates the procedural requirements of the First Amendment.

## 2. Georgia's Zoning Procedures Law

Artistic argues the Amending Ordinance constitutes a zoning ordinance requiring a proper hearing pursuant to the Georgia Zoning Procedures Law. Georgia's Zoning Procedures Law requires a local government to hold hearings when it proposes to take action that will result in a "zoning decision." Ga. Code Ann. § 36-66-4 (2000). The Georgia Supreme Court has said the requirements of the Zoning Procedures Law apply to the entire process of enacting or amending a zoning ordinance. Little v. City of Lawrenceville, 528 S.E.2d 515, 517 (Ga. 2000).

However, not every ordinance regulating the use of land constitutes a zoning ordinance. For instance, in Fairfax MK, Inc. v. City of Clarkston, 555 S.E.2d 722 (Ga. 2001), the court decided that a Gasoline Service Station Ordinance was not a

15

"zoning ordinance" even though the ordinance required a minimum distance of 500 feet between a gas station and a school or other place of public assembly. The court came to this conclusion because the definition of "zoning ordinance" under the Georgia Zoning Law[13] encompasses only "regulation of uses and development by means of zones or districts." Id. at 724. Furthermore, the court stated:

> The regulation of certain types of businesses due to their inherent character is not general and comprehensive like zoning . . . . The presence of lot size requirements or space restrictions does not transform a local licensing or regulatory ordinance into one governed by a zoning procedures statute where it is clear from a reading of the ordinance "as a whole that it is intended to regulate a particular occupation, rather than to regulate the general uses of land."

Id. (citations omitted). Under Fairfax, the Adult Ordinance is not a "zoning ordinance" even though it does place certain limitations on locations available to an adult business and establishes certain minimum lot sizes and road frontages. Rather than regulating "general uses of land," the Adult Ordinance regulates a particular type of activity -- adult entertainment. As such, the Amending Ordinance, re-adopting the Adult Ordinance, is not a zoning ordinance and is not subject to the hearing requirements established under the Zoning Procedures Law, even if it was

---

[13]Ga. Code Ann. § 36-66-3(5) defines "zoning ordinance" as "an ordinance or resolution of a local government establishing procedures and zones or districts within its respective territorial boundaries which regulate the uses and development standards of property within such zones or districts."

16

adopted as a "new" ordinance rather than as a true amendment.

### 3. The First Amendment

Artistic also argues the Amending Ordinance fails as a new enactment because the City did not have a proper evidentiary basis for the ordinance as required by the First Amendment. We previously concluded that the Adult Ordinance was content neutral and subject to the O'Brien test. Artistic Entm't, 223 F.3d at 1308-09. Under United States v. O'Brien, 391 U.S. 367 (1968), content neutral restrictions on speech are valid if the government can show a reasonable basis for believing its policy will indeed further a substantial government interest and that the policy is the least restriction possible which would further that interest. See Sammy's of Mobile, Ltd. v. City of Mobile, 140 F.3d 993 (11th Cir. 1998). Previously, we decided that the City of Warner Robins, in enacting the original Adult Ordinance, "had an adequate basis for concluding that proscribing the sale and consumption of alcohol would reduce the crime and other social costs associated with adult businesses." Artistic Entm't, 223 F.3d at 1309. Therefore, the question before us is whether the City could rely on the original evidentiary support for the Adult Ordinance in adopting the Amending Ordinance.

In Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986), the Supreme Court made it clear that it is entirely proper for a city to rely on the findings of other cities in creating legislation to combat the negative secondary effects associated with adult businesses. As long as "whatever evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses," such reliance is appropriate. Id. at 51-52. Here, the City adopted an ordinance almost identical to the original Adult Ordinance, making a slight adjustment designed and intended to correct the prior restraint problem found by this court. We cannot say that in enacting the Amending Ordinance the City's reliance on its own evidentiary basis compiled in support of the Adult Ordinance, which we specifically found adequate, was "unreasonable."

D.     The Alcohol Ordinance

We did not invalidate the Alcohol Ordinance in the previous appeal. But Artistic argues that the Alcohol Ordinance is so intertwined with the void Adult Ordinance, the Alcohol Ordinance should be struck down as unacceptably vague. The portion of the Alcohol Ordinance that prohibited the sale of alcoholic beverages at businesses "for which a license is required pursuant to Warner Robins' [Adult

18

Ordinance]," became unenforceable when no valid Adult Ordinance existed. But, we reject -- as did the district court -- Artistic's contention that the City, pursuant to the amended Alcohol Ordinance, could not prohibit adult entertainment on the premises of establishments offering alcoholic beverages.

We look to Georgia law to determine whether the Alcohol Ordinance -- divested of the licensing cross-reference -- survived our decision invalidating the Adult Ordinance.[14] In Union City Board of Zoning Appeals v. Justice Outdoor Displays, Inc., 467 S.E.2d 875 (Ga. 1996), the Georgia Supreme Court stated, "When a statute cannot be sustained as a whole, the courts will uphold it in part when it is reasonably certain that to do so will correspond with the main purpose which the legislature sought to accomplish by its enactment, if, after the objectionable part is stricken, enough remains to accomplish that purpose." Id. at 884 (internal quotations and citation omitted). After striking the referenced licensing provisions, much remained of the amended Alcohol Ordinance that was consonant with the legislature's purpose, and enough remained to accomplish that purpose.

---

[14] A municipal ordinance is essentially a "local statute;" it is subject to the same rules that govern the construction of statutes. See 6 Eugene McQuillin, The Law of Municipal Corporations § 20.39 (3d ed. 2002); City of Atlanta v. Miller, 569 S.E.2d 907, 908 (Ga. Ct. App. 2002) ("Construction of an ordinance is a question of law, subject to the canons of statutory construction....").

Artistic argues that the entire amended Alcohol Ordinance fails because portions of the Alcohol Ordinance adopt by reference certain definitions contained in the void Adult Ordinance. We disagree.

The Alcohol Ordinance incorporates by reference the definitions of "specified sexual activity" and "specified anatomical areas" contained in the Adult Ordinance. Incorporation by reference is a form of legislative shorthand; the effect of an incorporation by reference is the same as if the referenced material were set out verbatim in the referencing statute. A legislature -- for example, a city council -- may look to an infinite variety of sources to reference in crafting its law as long as the referenced material is both certain and readily available.

We are aware of no authority to the effect that a definition incorporated by reference into another otherwise valid ordinance (for example, the Alcohol Ordinance) ceases to be an operative definition just because it derives from a referenced ordinance (for example, the Adult Ordinance) that was declared unconstitutional for reasons having nothing to do with the definition. For incorporation purposes, as long as the referenced definition is certain and is readily available, it is valid: that the ordinance referenced has lapsed or has been repealed or has been invalidated (for reasons unrelated to the definition) is not important. See In re Heath, 12 S.Ct. 615, 616 (1892) ("Prior acts may be incorporated in a

20

subsequent one in terms or by relation, and when this is done the repeal of the former leaves the latter in force, unless also repealed expressly or by necessary implication").

Georgia law rejects the wholesale invalidation urged by Artistic. In Town of Douglasville v. Johns, 62 Ga. 423, 427 (Ga. 1879), the Georgia Supreme Court concluded that a legislative act granting a town charter was enforceable even though the charter incorporated by reference certain code sections declared to be unconstitutional:

> The legislature might have taken them [the referenced code provisions] from an English book or from a newspaper, and engrafted them on the charter; when it did so, it became the law to this town and all its citizens.

Absent clearly expressed legislative intent to the contrary, when a statute adopts by reference a definition in another statute, the adopted definition becomes a part of the adopting statute and is not affected by later amendment or repeal of the referenced act containing the definition. See, Dismuke v. State, 236 S.E.2d 12, 14 (Ga. Ct. App. 1977) ("Does the deletion of the referenced statutes legally affect the existence or enforcement of the adoptive Act? We find that it does not.").

The provisions of the amended Alcohol Ordinance that regulated exposure of "specified anatomical areas" and prohibited "specified sexual activity" referenced

21

the Adult Ordinance only for definition of the quoted terms; those definitions are certain, readily available, and their continued validity is in harmony with the intent of the legislature. The constitutional infirmity we found in the Adult Ordinance was unrelated to these referenced definitions. The Alcohol Ordinance remained valid and enforceable.[15]

AFFIRMED.

---

[15]We note that section 4-38 of the Alcohol Ordinance as it existed before the challenged amendments, entitled "Adult Entertainment," already prohibited the sale of alcoholic beverages at any facility that permits public display of nudity. That earlier provision was seemingly not enforced. The amendment did not delete or replace expressly this provision. When, however, the amendment was codified, it, too, was codified as section 4-38. It may be that the unamended section 4-38 survived the amendment. Or it may be that, even if the amendment to the Alcohol Ordinance was invalidated, the pre-existing section would apply. Because we do not rely on the unamended ordinance, we need not resolve these questions. Suffice it to say that even without concluding that the amended Alcohol Ordinance survived our prior restraint decision, we doubt Artistic could prevail.