[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 26, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-16334

_____

D.C. Docket No. 01-01961-CV-CAM-1

JOHN ACEVEDO,

Plaintiff-Appellant,

versus

FIRST UNION NATIONAL BANK,
a foreign banking corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

**(January 26, 2004)**

Before TJOFLAT, BIRCH and GOODWIN*, Circuit Judges.

GOODWIN, Circuit Judge:

Plaintiff John Acevedo appeals the district court's ruling that he cannot hold

_____

* Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting
by designation.

defendant First Union National Bank ("First Union") liable for cashier's checks issued by a failed bank but included in the failed bank's assets and liabilities accepted by First Union. Under 12 U.S.C. § 1822(e), First Union has no liability for deposits not claimed within eighteen months after the Federal Deposit Insurance Corporation (the "FDIC") mails notice to the last-known address of the depositor. 12 U.S.C. § 1822(e) (Supp. IV 1992) (amended 1993). However, because there is no evidence that the FDIC mailed the requisite notice, we reverse and remand to the district court.

## A.    Background

In July 1981, Southeast Bank in Miami, Florida, issued five cashier's checks, totaling $450,000, to five named payees. Four of the cashier's checks were in the amount of $100,000 and were issued to Roberto Sanchez, Alvaro Ocampo, Eugenio Echavarria and Juan Santamaria, respectively. The remaining cashier's check was in the amount of $50,000 and was issued to Armando Caycedo. In August 1981, in Colombia, South America, Juan Diaz claims to have received the cashier's checks from Sanchez.

Ten years later, in 1991, Southeast Bank failed, and the FDIC, as Southeast Bank's receiver, entered an Assistance Agreement with First Union. The Assistance Agreement provided that First Union would assume Southeast Bank's

2

liability for outstanding demand deposits, including cashier's checks.  In relevant part, section 2.1 of the Assistance Agreement provides:

> 2.1 *Liabilities Assumed by Assuming Bank*. (a) The Assuming Bank hereby expressly assumes at Book Value . . . and agrees to pay, perform, and discharge all of the following liabilities (and only the following liabilities) of the Failed Bank as of Bank Closing . . . :
>
> (i)    demand Deposits, including outstanding cashier's checks and other official checks, and time and savings Deposits . . . .

To cover the liabilities, the FDIC transferred funds to First Union.  Section 2.3 of the Assistance Agreement required First Union to return the transferred funds to the FDIC if, within eighteen months after Southeast Bank's closing, any depositor had not claimed an unpaid deposit.  In relevant part, section 2.3 of the Assistance Agreement provides:

> 2.3 *Unclaimed Deposits*.  If, within eighteen (18) months after Bank Closing, any depositor of the Failed Bank does not claim or arrange to continue such depositor's Deposit assumed pursuant to Section 2.1 at the Assuming Bank, the Assuming Bank shall, within fifteen (15) Business Days after the end of such eighteen (18) -month period, (i) refund to the Corporation the amount of each such Deposit (without reduction for service charges), (ii) provide to the Corporation a schedule of all such refunded Deposits in such form as may be prescribed by the Corporation, and (iii) assign, transfer, convey and deliver to the Receiver all right, title and interest of the Assuming Bank in and to Records previously transferred to the Assuming Bank and other records generated or maintained by the Assuming Bank pertaining to such Deposits.

In 1996, also in Colombia, Acevedo claims to have received the cashier's

3

checks from Diaz to satisfy a debt. In 2001, Acevedo, through his attorney, tendered the five cashier's checks to First Union for payment, but First Union refused to honor them.

Acevedo initially brought suit in state court, but First Union removed the action to the Northern District of Georgia. On the parties' cross-motions for summary judgment, the district court granted summary judgment for First Union. The court concluded that First Union was no longer liable for the cashier's checks because it had complied with the Assistance Agreement by returning the funds representing the unclaimed deposits.

## B.    Standard of Review

This court reviews de novo a district court's grant of summary judgment, applying the same standards applied by the district court. *Valley Drug Co. v. Geneva Pharm., Inc.*, 344 F.3d 1294, 1303 (11th Cir. 2003) (citing *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1242 (11th Cir. 2002)).

A motion for summary judgment is properly granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). After adequate time for discovery and upon motion, summary judgment

4

should be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). On a summary judgment motion, the record and all reasonable inferences must be viewed in the light most favorable to the non-moving party. *Nat'l Fire Ins. Co. of Hartford v. Fortune Const. Co.*, 320 F.3d 1260, 1267 (11th Cir. 2003).

## C. Discussion

Acevedo argues that First Union remains liable for the cashier's checks despite returning the underlying funds to the FDIC. Acevedo also contends that First Union can rely on § 1822(e) only if it presents evidence that the FDIC mailed notice to each depositor's last-known address. First Union responds that, according to the Assistance Agreement and § 1822(e), its liability for the cashier's checks ended when it refunded the unclaimed deposits.

We begin by observing that First Union became liable for the cashier's checks by entering an Assistance Agreement with the FDIC, not by merging with Southeast Bank under 12 U.S.C. § 215a, as Acevedo has argued. When Southeast Bank failed, the FDIC, as its insurer, was required either to pay the insured deposits in cash or to "mak[e] available to each depositor a transferred deposit . . .

5

in another insured depository institution . . . in an amount equal to the insured deposit of such depositor . . . ." § 1821(f)(1); *see also Lawson v. Fed. Deposit Ins. Corp.*, 3 F.3d 11, 13 (1st Cir. 1993). The FDIC chose the latter option, commonly called a "purchase and assumption," *see E.I. du Pont de Nemours and Co. v. Fed. Deposit Ins. Corp.*, 32 F.3d 592, 595 (D.C. Cir. 1994), and arranged to sell certain assets of Southeast Bank to First Union, with the agreement that First Union would assume the corresponding deposit liabilities. The opening paragraph of the Assistance Agreement identifies the parties to the agreement as the FDIC, in its capacity as the receiver of Southeast Bank, and First Union.

A "deposit" for purposes of the Federal Deposit Insurance Act, which governs the Assistance Agreement in this case, includes, *inter alia*, an "outstanding draft[,] . . . cashier's check, money order, or other officer's check issued in the usual course of business for any purpose, including without being limited to those issued in payment for services, dividends, or purchases . . . ." 12 U.S.C. § 1813(*l*)(4). Interpreting § 1813(*l*)(4), the Tenth Circuit concluded that outstanding and unpaid cashier's checks were converted, upon the bank's insolvency, from negotiable instruments to unclaimed deposits by operation of law. *Fed. Deposit Ins. Corp. v. McKnight*, 769 F.2d 658, 661 (10th Cir. 1985). Accordingly, the cashier's checks in that case were no longer governed by the

"special rules" applicable to negotiable instruments. *Id.* Likewise, when Southeast Bank failed, the cashier's checks became unclaimed deposits. Thus, we turn our attention to the Assistance Agreement.

The district court concluded that First Union's liability ceased when it complied with the Assistance Agreement by returning the unclaimed deposits to the FDIC. However, section 2.1 of the Assistance Agreement discusses First Union's liabilities, but does not limit those liabilities to the passing of a specified time or the occurrence of certain event. Similarly, section 2.3 details First Union's obligation to return the funds earmarked for the unclaimed deposits, but does not expressly shift the liability for an unclaimed deposit back to the FDIC. Finding nothing in the Assistance Agreement that expressly terminates First Union's liability, we cannot accept the district court's conclusion. Our inquiry does not end, however, because "[t]his court will affirm a grant of summary judgment if it is correct for any reason." *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993). We next consider the statute that governs unclaimed deposits.

Section 1822(e) states that "[i]f, after the Corporation shall have given at least three months' notice to the depositor by mailing a copy thereof to his last-known address appearing on the records of the depository institution in default,

any depositor in the depository institution in default shall fail to claim his insured deposit . . . within eighteen months after the appointment of the receiver for the depository institution in default . . . all rights of the depositor . . . against the new bank . . . with respect to the transferred deposit, shall be barred . . . ." § 1822(e).[1] We interpret § 1822(e) as barring the depositor's rights against the bank that assumed the deposit if the depositor has neglected to claim an insured deposit *after* the FDIC mailed notice to depositor's last known address. *See id.* Simply put, Congress has preconditioned the preclusive effect of the statute on the mailing of notice by the FDIC. It follows that the party seeking refuge under the statute bears the burden of demonstrating that the FDIC mailed the appropriate notice.

Here, no depositor presented the cashier's checks within eighteen months after a receiver was appointed for Southeast Bank in 1991. This neglect resulted in the depositor's rights against First Union being barred *if* the FDIC mailed notice to the depositor's last known address appearing on the failed bank's records.[2]

---

[1] In 1993, Congress amended 12 U.S.C. § 1822(e), but instructed that the former version of § 1822(e) apply to banks placed in receivership between January 1, 1989, and June 28, 1993. *See Commonwealth of Mass. v. Fed. Deposit Ins. Corp.*, 102 F.3d 615, 618 (1st Cir. 1996); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 40 (D.C. Cir. 1999).

[2] We note that, while Acevedo may presently constitute the depositor, and while Diaz may have constituted the depositor at the time of Southeast Bank's insolvency in 1991, under § 1822(e) the FDIC was only required to mail notice to the last-known address of the depositor appearing on Southeast Bank's records. *See* § 1822(e).

However, because the record contains no evidence that the FDIC mailed the requisite notice, much less to whom notice must have been sent, we remand to the district court for further proceedings.

## D.    Conclusion

We hold that for § 1822(e) to bar a depositor's rights against a bank that assumed the insured deposit, there must be evidence that the FDIC mailed notice to the depositor's last-known address appearing on the failed bank's records. The district court did not make such a finding, concluding instead that the Assistance Agreement controlled First Union's liability for the cashier's checks. We reverse the summary judgment as premature and remand for a determination whether the FDIC satisfied the notice provision in § 1822(e).

REVERSED and REMANDED.