[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 26, 2007
THOMAS K. KAHN
CLERK

No. 06-12477

D. C. Docket No. 01-01961 CV-CAM-1

JOHN ACEVEDO,

Plaintiff-Appellant,

versus

FIRST UNION NATIONAL BANK,
a foreign banking corporation,

Defendant-Appellee.

Appeal from the United States District Court
for the Northern District of Georgia

**(January 26, 2007)**

Before DUBINA and WILSON, Circuit Judges, and HODGES,* District Judge.

_____
*Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida,
sitting by designation.

DUBINA, Circuit Judge:

John Acevedo ("Acevedo") appeals from the district court's order granting summary judgment in favor of First Union National Bank ("First Union") which refused to honor cashier's checks issued by a failed bank, whose assets and liabilities First Union assumed. For the reasons set forth below, we affirm the district court's entry of summary judgment in favor of First Union.

## I. BACKGROUND

In July 1981, Southeast Bank ("Southeast Bank") in Miami, Florida, issued five cashier's checks, totaling $450,000, to five named payees (Roberto Sanchez ("Sanchez"), Alvaro Ocampo, Eugenio Echavarria and Juan Santamaria). In August 1981, Sanchez transferred all five cashier's checks to Juan Diaz ("Diaz").[1] Ten years later, in 1991, Southeast Bank failed, and the Federal Deposit Insurance Corporation ("FDIC") assumed receivership over the bank. The FDIC, as Southeast Bank's receiver, was required to pay Southeast Bank's insured deposits in cash or make such funds available to depositors in another insured depository institution. *See* 12 U.S.C. § 1821(f)(1) (1994). The FDIC chose the latter option and entered into an Assistance Agreement with First Union under which First Union assumed Southeast Bank's liability for demand deposits, including

_____

[1]It is unclear how Sanchez became the holder of all five cashier's checks.

outstanding cashier's checks. The FDIC transferred funds to First Union to cover the liabilities.

As receiver, the FDIC also assumed control of Southeast Bank's records and was responsible for notifying Southeast Bank's depositors that they must claim their deposit. *See* 12 U.S.C. § 1822(e) (1992) (amended 1993).[2] The Assistance Agreement required First Union to return any unclaimed funds to the FDIC if, within eighteen months after Southeast Bank's closing, any depositor had not claimed his unpaid deposit. Depositors who had failed to claim their deposit were barred from asserting a right to the unclaimed deposits, *if* the FDIC provided notice pursuant to § 1822(e). *See id.*; *see also Acevedo*, 357 F.3d at 1248.

In September, October, and November 1991, *The Miami Herald* published a notice to Southeast Bank's creditors. The notice advised creditors that Southeast Bank had closed and that creditors must present their claims to the FDIC by December 31, 1991. The notice also advised creditors that claims filed after December 31, 1991, may be barred in accordance with 12 U.S.C. § 1821. Although the amended 12 U.S.C. § 1822(e) did not change the notification

---

[2]"In 1993, Congress amended 12 U.S.C. § 1822(e), but instructed that the former version of § 1822(e) apply to banks placed in receivership between January 1, 1989, and June 28, 1993." *Acevedo v. First Union Nat'l Bank*, 357 F.3d 1244, 1248 n.1 (11th Cir. 2004); *see also* Unclaimed Deposits at Insured Banks and Savings Associations, Pub. L. No. 103-44, sec. 2(b), 107 Stat. 220, 221 (1993).

procedures for banks placed in receivership between January 1, 1989, and June 28, 1993, for purposes of existing receiverships, Congress instructed that § 1822(e) not bar an insured depositor's claim, so long as the claim was made prior to the termination of the receivership. *See* Pub. L. No. 103-44, sec. 2(b), 107 Stat. 220, 221. As a result, in September 1993, *The Florida Times-Union* (Jacksonville), the *Orlando Sentinel*, the *St. Petersburg Times*, *The Tampa Tribune*, *The Palm Beach Post*, the *Sarasota Herald-Tribune*, the *South Florida Sun-Sentinel* (Broward, Palm Beach, and Dade counties), and *The Miami Herald* published notices to the former depositors of Southeast Bank. The notices advised depositors that Southeast Bank was closed, and that the FDIC had arranged for all deposits to be transferred to First Union. The notice also advised depositors that Congress had extended the claiming period, and that depositors could claim their deposits at any time before the FDIC terminated the receivership. Finally, the notice advised depositors that claims filed after the FDIC terminated the receivership would be barred.

In 1996, Diaz transferred the five cashier's checks, issued by Southeast Bank, to Acevedo. On January 16, 2001, Acevedo, through his attorney, tendered the five cashier's checks to First Union for payment; however, First Union refused

4

to honor them.[3]  Acevedo filed suit against First Union in state court for its refusal

to honor the  cashier's checks.  First Union removed the action to the United States

District Court for the Northern District of Georgia.  On the parties' cross-motions

for summary judgment, the district court entered summary judgment in favor of

First Union because it held that First Union had complied with the Assistance

Agreement by returning the funds representing the unclaimed deposits to the

FDIC.

On appeal, this court concluded that no language within the Assistance

Agreement expressly terminates First Union's liability to pay the cashier's checks.

*Acevedo*, 357 F.3d at 1248.  We held that the Assistance Agreement neither

limited First Union's liability to the passing of a specified time or the occurrence

of a certain event, nor did the Assistance Agreement expressly shift liability for an

unclaimed deposit back to the FDIC.  *Id.*  However, we explained that Acevedo,

having failed to present the cashier's checks within eighteen months after the

FDIC was appointed receiver, was barred from recovering the deposits, pursuant

to § 1822(e), "*if* the FDIC mailed notice to the depositor's last known address

appearing on the failed bank's records."  *Id.*  Therefore, we reversed the judgment

---

[3]The parties do not indicate the date upon which the FDIC terminated the receivership; however, we assume that the FDIC terminated the receivership prior to January 16, 2001.

in favor of First Union and remanded the case for a determination whether the FDIC satisfied the notice provision in § 1822(e). *Id.* at 1248-49.

On remand, First Union presented the affidavit testimony of George Fritz ("Fritz"), FDIC Supervisory Resolutions and Receiverships Specialist. Fritz attested that neither the five named payees nor the subsequent holders of the checks were listed as depositors of Southeast Bank. Additionally, Fritz attested that Southeast Bank had no address information on file for any of the payees or subsequent holders of the checks. Therefore, according to Fritz, the FDIC could not, and did not, mail notice to any of the payees or subsequent holders of the checks.

The district court concluded that mailed notice is required by the Due Process Clause only if a claimant's identity is known or reasonably ascertainable. Given that the records of Southeast Bank did not contain the names or addresses of any of the holders of the cashier's checks, the district court found that notifying the holders by mail would require impracticable and extended searches. Under these circumstances, the district court held that published notices were sufficient to meet the requirements of due process. The district court again entered summary judgment in favor of First Union. Acevedo appeals that judgment.

## II. STANDARD OF REVIEW

6

We review *de novo* a district court's order granting summary judgment. *Green v. Union Foundry Co.*, 281 F.3d 1229, 1233 (11th Cir. 2002). In conducting our review, we apply the same legal standards as the district court. *Vaughan v. Cox*, 343 F.3d 1323, 1328 (11th Cir. 2003). Thus, we review the facts in the light most favorable to the non-moving party and draw all reasonable inferences in his favor. *Artistic Entm't, Inc. v. City of Warner Robins*, 331 F.3d 1196, 1203 (11th Cir. 2003). Summary judgment is not appropriate unless the evidence demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

## III. DISCUSSION

Acevedo argues that the district court erred in granting summary judgment in favor of First Union because the plain language of 12 U.S.C. § 1822(e) requires notice by mail. Acevedo does not dispute that the records of Southeast Bank did not contain the names or addresses of any of the payees or subsequent holders of the cashier's checks. However, relying on *Lepelletier v. FDIC*, 164 F.3d 37 (D.C. Cir. 1999), he contends that First Union failed to show that the FDIC made diligent efforts to ascertain the identity and addresses of the payees or holders of the checks. Without a showing of such diligent efforts, he argues, publication

7

alone was insufficient to comport with due process requirements. First Union

argues that § 1822(e) does not require mailed notice if the depositor's last-known

address does not appear in the records of the depository institution in default.

Given that the identities and addresses of the depositors were unknown to the

FDIC, First Union alleges that notice by publication was sufficient. We agree.

Before the claim of a depositor of a failed bank is extinguished, §1822(e)

requires the FDIC to notify the depositor that he must claim the deposit. Prior to

the 1993 amendment, § 1822(e) stated, in relevant part,

> [if], after the Corporation shall have given at least three months'
> notice to the depositor by *mailing a copy thereof to his last-known
> address appearing on the records of the depository institution in
> default*, any depositor in the depository institution in default shall fail
> to claim his insured deposit . . . within eighteen months after the
> appointment of the receiver for the depository institution in default . .
> . all rights of the depositor . . . against the new bank . . . with respect
> to the transferred deposit, shall be barred . . . .

§ 1822(e) (emphasis added). By its plain terms, § 1822(e) required notice by mail

*only* to the extent that a depositor's last known address appears in the records of

the depository institution in default. In the present case, neither the names nor the

addresses of the holders of the cashier's checks appeared in Southeast Bank's

files. We conclude that *Lepelletier*, the case upon which Acevedo relies, is

8

unpersuasive because it does not address the precise issue of notification when the identity and address of a claimant is unknown.

Moreover, even if First Union was required to go beyond Southeast Bank's records to search for the depositor's address, without at least a record of the name of the depositor, it would be impossible to locate him. Under these circumstances, with no information in the bank's records to locate the depositor, even the most diligent search efforts would prove futile. Because the records of Southeast Bank contained neither the name nor the address of any depositor associated with Acevedo's checks, we conclude that the FDIC was neither able nor required to mail notice under § 1822(e).

We turn now to whether notice by publication satisfied due process requirements. The Supreme Court has stated that the precise form of notice required by the Due Process Clause will vary, depending upon the circumstances and conditions of each case. *Walker v. City of Hutchinson, Kansas*, 352 U.S. 112, 115, 77 S. Ct. 200, 202 (1956). As the district court correctly observed, notice by mail is required only if a claimant's identity is known or reasonably ascertainable. *See Tulsa Prof'l Collection Servs., Inc. v. Pope*, 485 U.S. 478, 490-91, 108 S. Ct. 1340, 1347-48 (1988). However, "[f]or creditors who are not 'reasonably

ascertainable,' publication notice can suffice." *Id.* at 490, 108 S. Ct. at 1347. This

has long been recognized as the law:

> This Court has not hesitated to approve of resort to publication . . .
> where it is not reasonably possible or practicable to give more
> adequate warning. Thus[,] it has been recognized that, in the case of
> persons missing or unknown, employment of an indirect and even a
> probably futile means of notification is all that the situation permits
> and creates no constitutional bar to a final decree foreclosing their
> rights.

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 317, 70 S. Ct. 652,

658 (1950); *see also Jones v. Flowers*, __ U.S. __, 126 S. Ct. 1708, 1720 (2006)

(recognizing that notice by publication is adequate when it is not reasonably

possible or practicable to give more adequate warning). Because it is undisputed

that the FDIC could not readily ascertain the identities and addresses of the named

payees or subsequent holders of the checks, we conclude that the FDIC's

published notices were sufficient to comport with due process requirements.

Therefore, § 1822(e) bars Acevedo's claim against First Union for refusal to honor

the cashier's checks.[4]

## IV. CONCLUSION

---

[4]Alternatively, First Union urges this court to affirm the district court's entry of summary judgment because it contends that Acevedo's claim is barred by 12 U.S.C. § 1822(c). Because we affirm the judgment of the district court on the above-stated grounds, we need not address § 1822(c).

10

For the foregoing reasons, we hold that the FDIC was neither able nor required to mail notice pursuant to § 1822(e) and notice by publication was sufficient. Accordingly, we affirm the district court's grant of summary judgment in favor of First Union.

AFFIRMED.