[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 13-13328

———————————

D.C. Docket No.  1:11-cv-22389-RNS

100079 CANADA, INC.,
A Foreign Corporation,

Plaintiff - Appellant,

versus

STIEFEL LABORATORIES, INC.,
CHARLES W. STIEFEL,

Defendants – Appellees,

BRENT D. STIEFEL, et al.,

Defendants.

———————————

Appeal from the United States District Court
for the Southern District of Florida

———————————

(December 31, 2014)

Before MARTIN,[*] Circuit Judge, and RESTANI,[**] Judge, and MERRYDAY,[***] District Judge.

RESTANI, Judge:

Appellant, 100079 Canada, Inc. ("Appellant"), appeals from the district court's grant of summary judgment on all claims brought against Appellees Stiefel Laboratories, Inc. ("SLI") and its principal Charles Stiefel ("Mr. Stiefel") (collectively "Appellees").  The claims relate to the repurchase of 750 shares of SLI stock held by Appellant.  The district court held that Appellant's claims were time-barred under the applicable statutes of limitation.  After careful review and with the benefit of oral argument, because we agree that the statutes of limitation have run on all claims, we affirm.

## STATEMENT OF FACTS[1]

The Appellant is a Canadian corporation owned and controlled by Richard MacKay ("Mr. MacKay").  SLI is a pharmaceutical skin care company founded in 1847, which remained privately held until GlaxoSmithKline ("GSK") acquired it in

---

[*] Chief Judge Carnes recused himself after hearing oral arguments.  Judge Martin was substituted to this panel in his stead.

[**] Honorable Jane A. Restani, United States Court of International Trade Judge, sitting by designation.

[***] Honorable Steven D. Merryday, United States District Judge for the Middle District of Florida, sitting by designation.

[1] The facts as described below, which essentially are undisputed, are taken from 100079 Canada, Inc. v. Stiefel Labs, Inc., 954 F. Supp. 2d 1360, 1362–67 (S.D. Fla. 2013).  It is the legal significance of these facts that is disputed.

April 2009.  Mr. MacKay is a former director and shareholder of SLI who owned all of his SLI shares through the Appellant corporation.

Mr. MacKay was appointed to the board of directors of SLI in 2002 and became Vice Chairman in 2007.  In December 2006, Mr. MacKay was informed that Blackstone Healthcare Partners LLC ("Blackstone") proposed a private equity investment of $1.8 billion to SLI.  Later, in January 2007, Blackstone expressed an interest in acquiring SLI.  Although, according to Mr. MacKay, it appeared to him that Mr. Stiefel was not interested in selling SLI, private equity negotiations recommenced in mid-2007 and Blackstone updated its offer on August 1, 2007, to a value of $2.9 billion.  Mr. MacKay and the other board members were informed of the increased valuation.

Subsequently, Mr. Stiefel sent drafts of legal documents to the board on or about August 3, 2007, which contained a preferred stock value of $60,407.60 per share.  The documents also indicated that Blackstone and SLI were negotiating Blackstone's investor rights in the event of an initial public offering ("IPO") or sale of SLI at a later date.  On August 9, 2007, SLI announced Blackstone's investment to SLI's employees.  In the announcement, SLI indicated that although there was no current plan for SLI to go public, Blackstone had an exit arrangement at the end of eight years that might include an IPO.

In May 2008, Mr. MacKay contacted Mr. Stiefel with an official offer to sell

3

750 SLI shares back to SLI.[2]  After a brief discussion and authorization from Mr. Stiefel, SLI agreed to buy back 750 shares at $14,517 per share, based on the 2007 Bogush valuation.[3]  On June 18, 2008, after the necessary paperwork was completed, SLI sent the payment, care of Mr. MacKay, to the Appellant.

On February 19, 2009, Mr. MacKay was informed that in November 2008, SLI had explored a potential offer from a French pharmaceutical firm, Sanofi-Aventis ("Sanofi"), to purchase SLI.  On March 24, 2009, SLI received preliminary, non-binding bid letters from GSK, which offered $3.1 billion, and Sanofi, which offered $2.8 billion.  GSK submitted an updated offer on April 16, 2009, and the board, including Mr. MacKay, approved the merger with GSK on April 19, 2009, for $2.9 billion in cash.

Appellant argues two points on appeal: (1) the district court erred in granting summary judgment with respect to the § 10(b) claim under federal securities law[4]; and (2) the district court erred in granting summary judgment regarding the claim for breach of fiduciary duty under Delaware common law.  First, the essence of

---

[2] On occasion SLI bought back shares from employees.  In buying back shares, the annual valuations of SLI's employee stock bonus plan would frequently serve as a benchmark for the stock price.  The annual valuations were performed by Terrance Bogush ("Bogush valuations"), an accountant retained by SLI.

[3] The Bogush valuation did not take into account the August 2007 private equity investment from Blackstone and Mr. MacKay did not conduct his own evaluation of the value of his common stock.

[4] A 10(b) claim is, in essence, a claim of fraud made in connection with the purchase or sale of securities.  See 15 U.S.C. § 78(j)(b) (2012); 17 C.F.R. § 240.10b-5 (2014) (collectively "10(b)").

Mr. MacKay's federal securities law claim is that at the time of the sale of his stock, in June 2008, he was unaware of the then ongoing negotiations to sell SLI, and had he been aware of those negotiations, he would not have sold his stock. Mr. MacKay claims he did not become aware of those negotiations until sometime after the filing of the Bacon v. Stiefel Labs., No. 09-cv-21871-CV-KING, 2011 U.S. Dist. LEXIS 119654 (S.D. Fla. Oct. 17, 2011), action on July 7, 2009. [5] It is at that point, the Appellant maintains, the cause of action accrued, and the statute of limitations period should have commenced. [6] This action was filed on July 1, 2011.

Second, Appellant contends that Appellees breached their fiduciary duty to Appellant as a shareholder by concealing the likelihood of a liquidity event in the near future when SLI bought back the shares from Mr. MacKay. According to Mr. MacKay, because he relied on Mr. Stiefel's assertions that SLI would not be sold in the near future, the statute of limitations should not run from the date of the

---

[5] In Bacon, SLI former employees brought claims against SLI alleging that the company had forced them to sell their shares of SLI stock back to the company so executives could improperly benefit from the impending sale to GSK. In the course of discovery in the Bacon case, the former employees discovered that the merger timeline differed from SLI's official company line during the merger announcement. Appellant claims that it was not until this discovery came to light that he had any indication that the merger discussions had occurred prior to November 2008.

[6] Appellant stresses that the Private Securities Litigation Reform Act ("PSLRA") heightened the standards for pleading securities fraud claims, including a heightened scienter requirement. See 15 U.S.C. § 78u–4(b)(2) (2012). Although Appellant asserts that he refrained from filing his complaint for over two years after the sale of his stock in order to meet this burden, there is little reason to suppose that a pleading based on facts known, at the latest, in the Spring of 2009 would have failed for technical pleading defects.

5

injury, June 18, 2008, but would be tolled under the equitable tolling doctrine.

In response, Appellees counter that Mr. MacKay had sufficient knowledge to plead a complaint under federal securities law by April 19, 2009, at the latest. This, Appellees argue, bars the federal securities claim. Second, Appellees contend that Mr. MacKay is not eligible to invoke equitable tolling under Delaware law. Accordingly, the statute of limitations ran from June 18, 2008, the date of Appellant's injury, and the claim is time-barred. We agree with Appellees regarding both claims.

## DISCUSSION

A district court's grant of summary judgment is reviewed de novo, applying the same standards as the district court. See Acevedo v. First Union Nat'l Bank, 357 F.3d 1244, 1246–47 (11th Cir. 2004). Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party, id. at 1247, but the ultimate standard is that there exists "no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In arguing for summary judgment based on the statute of limitations, the moving party must demonstrate that the non-moving party had notice of its claim or would have

6

discovered the facts giving rise to its claim had the non-moving party exercised reasonable diligence before the statute of limitations expired.  See In re Beef Indus. Antitrust Litig., 600 F.2d 1148, 1171 (5th Cir. 1979).[7]

## I.    Section 10(b) Liquidity Claim

To plead a § 10(b) securities fraud claim, a plaintiff must allege: "(1) a material misrepresentation or omission; (2) made with scienter; (3) a connection with the purchase or sale of a security; (4) reliance on the misstatement or omission; (5) economic loss [i.e., damages]; and (6) a causal connection between the material misrepresentation or omission and the loss, commonly called 'loss causation.'"  FindWhat Investor Grp. v. FindWhat.com, 658 F.3d 1282, 1295 (11th Cir. 2011) (brackets in original).

Under 28 U.S.C. § 1658(b), a fraud claim under § 10(b) of the Securities Exchange Act of 1934, must be filed within the earlier of "2 years after the discovery of the facts constituting the violation; or 5 years after such violation." 28 U.S.C. § 1658(b)(2012).[8]  A § 10(b) plaintiff only needs to show that "it is 'as

---

[7] The Eleventh Circuit adopted Fifth Circuit decisions prior to October 1, 1981 as binding precedent.  See Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

[8] Further, the Supreme Court held "the facts constituting the violation include the fact of scienter, a mental state embracing intent to deceive, manipulate, or defraud."  Merck & Co. v. Reynolds, 559 U.S. 633, 637 (2010) (internal quotation marks omitted).  Additionally, "a fact is not deemed 'discovered' until a reasonably diligent plaintiff would have sufficient information about that fact to adequately plead it in a complaint."  City of Pontiac Gen. Emps.' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 175 (2d Cir. 2011).  Therefore, "the reviewing court must ask: When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?"  Mizzaro v. Home Depot, Inc., 544 F.3d

7

least likely as' not that the defendant acted with the relevant knowledge or intent . . . ." Merck & Co. v. Reynolds, 559 U.S. 633, 649 (2010) (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 328 (2007)).

The Supreme Court has explained that "a cause of action accrues (1) when the plaintiff did in fact discover, or (2) when a reasonably diligent plaintiff would have discovered, 'the facts constituting the violation'—whichever comes first." Id. at 637. See also id. at 653 (implying that a reasonably diligent plaintiff would conduct an investigation to "discover the facts constituting the violation"). Therefore, even if Appellant did not in fact discover the information necessary to plead each element of a proper complaint, as long as a reasonably diligent plaintiff would have had sufficient information to adequately plead an effective complaint more than two years prior to when this action was commenced, Appellant's claim would still be time barred

In August 2007, Mr. MacKay became aware of the private equity investment from Blackstone for $2.9 billion. On June 18, 2008, Mr. MacKay knew that he sold his shares at a depressed per share rate compared to the valuation Blackstone had made in August 2007. On February 19, 2009, Mr. MacKay was informed that SLI had been in negotiations and had been exploring a potential bid from Sanofi since November 2008. On April 19, 2009, the board of directors, including Mr.

---

1230, 1239 (11th Cir. 2008) (internal quotation marks omitted).

MacKay, voted to accept the $2.9 billion bid from GSK.  At this point, Mr. MacKay knew that SLI, through Mr. Stiefel, was "saying one thing (in essence, 'we are going to keep the company privately held'), while doing another (involving Blackstone, having secret discussions with Sanofi about selling or going public, entertaining acquisition bids from Sanofi and GSK, and in fact selling the company to GSK)." 100079 Canada, Inc., 954 F. Supp. 2d at 1371.  By April 19, 2009, therefore, Mr. MacKay knew, or with reasonable diligence should have known, that SLI had been considering a potential liquidity event when it bought back his shares in June 2008.

In April 2009, more than two years before he filed suit, Mr. MacKay was aware of each of the elements giving rise to his federal securities claim.  First, Mr. MacKay knew that SLI had been making misrepresentations regarding the potential for a liquidity event.  Second, it was more likely than not that these misrepresentations were made with scienter.  Third, these misrepresentations were in connection with the sale of Mr. MacKay's SLI stock.  Fourth, Mr. MacKay knew whether or not he relied on the assurances that the company would remain privately held for the near future when he sold his stock in June 2008.  Fifth, the sale caused an economic loss in the form of lost profits from selling the shares prior to the liquidity event.  Sixth and lastly, the economic loss was in connection with the misrepresentation.  Accordingly, no later than April 19, 2009, Mr.

9

MacKay was in a position to adequately plead each element of a federal securities claim, FindWhat Investor Grp., 658 F.3d at 1295, and the statute of limitations began to run from that date.

Given the secretive nature of the discussions and stark divergence from the company line, a reasonable person in Mr. MacKay's position would have performed at least a modest investigation to determine when the secretive negotiations to sell the company had begun.  The nature of Blackstone's involvement and the complexity involved in structuring a multi-billion dollar corporate sale made it reasonable to believe that negotiations had been occurring before November 2008, and likely during the June 2008 timeframe.[9]  Mr. MacKay did not need to investigate very deeply after negotiations continued with Blackstone and Mr. MacKay was informed of the greatly increased potential value of his shares to determine that it was more likely than not that SLI was contemplating a liquidity event at the time he sold back some of his shares at a low price.  Thus, Mr. MacKay had sufficient knowledge to plead his § 10(b) claim on April 19, 2009, when he voted on approving the ultimate merger, a date more than two years prior to commencement of the instant action.  This claim is time-barred and the district court's summary judgment award is affirmed.

---

[9] The information Appellant learned through discovery in the Bacon litigation indicated that SLI had been contemplating selling the company as early as in 2006.

10

## II.    Delaware Common Law Claim

Under Delaware common law, a cause of action for breach of fiduciary duty is governed by a three-year statute of limitations.  See Am. Int'l Grp., Inc. v. Greenberg, 965 A.2d 763, 812 (Del. Ch. 2009).  "The statute of limitations begins to run at the time that the cause of action accrues, which is generally when there has been a harmful act by the defendant."  In re Tyson Foods, Inc. Consol. S'holder Litig., 919 A.2d 563, 584 (Del. Ch. 2007).  The parties and district court correctly agree that the harmful act giving rise to the cause of action occurred when Appellant was paid the deflated per share price of $14,517, on June 18, 2008.  See 100079 Canada, Inc., 954 F. Supp. 2d at 1371.  Therefore, because the claim was not filed until July 1, 2011, more than three years after the injury, it is untimely unless the statute of limitations can be tolled.

Delaware law provides for three instances which give rise to tolling of the statute of limitations: "inherently unknowable injuries,[10] fraudulent concealment,[11] and equitable tolling."  100079 Canada, Inc., 954 F. Supp. 2d at 1372 (citing Jepsco, Ltd. v. B.F. Rich Co., 2013 WL 593664, at *8 (Del. Ch. Feb. 14, 2013)).

---

[10] The district court noted that "[b]ecause the Plaintiff does not argue that the 'inherently unknowable injuries' doctrine applies here, the Court has no occasion to apply it.  In any case, the doctrine is a poor fit on these facts . . . ."  100079 Canada, Inc., 954 F. Supp. 2d at 1372.  Further, neither the Appellant nor the Appellee discussed the "inherently unknowable injuries" doctrine in their respective briefs before the court.

[11] The "fraudulent concealment" doctrine is not analyzed by the district court in its Order, nor is it mentioned by the Appellant or Appellees in their briefs.  As such, it is not on review before the court.

11

Equitable tolling pauses the statute of limitations for a plaintiff who has "reasonably relied upon the competence and good faith of a fiduciary" until that plaintiff has become "<u>objectively</u> aware of the facts giving rise to the wrong . . . ." Am. Int'l Grp., Inc., 965 A.2d at 812 (internal quotation marks omitted). The purpose of equitable tolling is to protect shareholders and ensure that fiduciaries cannot immunize themselves from accountability for their own wrongdoing. See id. at 813. Because the survival of Appellant's claim depends on whether the statute of limitations was tolled, the threshold question is whether Mr. MacKay is eligible for equitable tolling.

As equitable tolling is typically applied to shareholders, Appellant contends that as a shareholder, equitable tolling should be applied. Appellees argue that not only has Mr. MacKay failed to assert that he reasonably relied on Mr. Stiefel, but that Mr. MacKay, as a corporate insider, should not be able to claim reliance "without doing violence to the entire notion of equitable tolling." Appellees' Br. 41. Appellant admits that Mr. MacKay "had access to more information than the average shareholder," but maintains that Mr. MacKay's "board member status did not grant him the top secret clearance the Stiefels reserved to themselves about their short-term plan to sell the company." Appellant's Br. 53.

Although Appellant makes a credible argument for extending the equitable tolling doctrine to director-shareholders, applying equitable tolling in this case, as

12

the district court noted, would "extend the doctrine beyond its intended purpose."

100079 Canada, Inc., 954 F. Supp. 2d at 1373.  The district court correctly noted

that Mr. MacKay was:

> not a mere shareholder or investor forced to rely upon those in positions of power for all his information . . . .  For such a person to invoke equitable tolling, the Court would, in effect, have to find that MacKay abdicated his own duties as a board member and fiduciary and would seemingly extend the doctrine beyond its intended purpose.

Id.  Mr. MacKay, through Appellant, was a shareholder in the corporation, and had

he not been a board member, would potentially be eligible for equitable tolling.

Mr. MacKay, however, was the Vice Chairman of the Board of Directors and a

corporate fiduciary.  As such, Mr. MacKay had greater access to information

regarding the status of the company than an ordinary investor who is forced to rely

on those in power for information.

Further, allowing Mr. MacKay to invoke the equitable tolling doctrine here

could serve to reward an abdication of fiduciary duties by corporate fiduciaries.  In

essence, a corporate fiduciary could abandon his fiduciary duty to the detriment of

ordinary shareholders, but still avail himself of an avenue of recovery intended for

an ordinary shareholder in an action against the corporation.  This would run

contrary to the purpose of the equitable tolling doctrine.  See Am. Int'l. Grp., Inc.,

965 A.2d at 813 ("The obvious purpose of the equitable tolling doctrine is to

ensure that fiduciaries cannot use their own success at concealing their misconduct

as a method of immunizing themselves from accountability for their wrongdoing."). Therefore, Mr. MacKay is ineligible for equitable tolling and the claim is time-barred. The district court's summary judgment award is accordingly affirmed.

## CONCLUSION

For the forgoing reasons the district court's grant of summary judgment is AFFIRMED.