[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12935
Non-Argument Calendar

_____

D.C. Docket No. 1:18-cv-21867-KMM

PAULETTE HOWARD BUNCH,

Plaintiff-Appellant,

versus

CARNIVAL CORPORATION,
a.k.a. Carnival Cruise Line,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(September 10, 2020)

Before MARTIN, ROSENBAUM, and ED CARNES, Circuit Judges.

PER CURIAM:

Paulette Bunch tripped over and fell on a raised threshold while exiting an aerobics room on the *Glory*, a cruise ship owned and operated by Carnival Corporation. She brought a maritime personal injury lawsuit against Carnival, asserting a negligence claim. The district court granted summary judgment in favor of Carnival, concluding that Bunch had failed to show a genuine issue of material fact that the cruise line had actual or constructive knowledge of the dangerous condition. The court later denied Bunch's motion to alter or amend the judgment based on newly discovered evidence. This is Bunch's appeal.[1]

I.

The facts in the summary judgment record are as follows. Bunch was a passenger on board the Carnival cruise ship *Glory*. The ship's gym and aerobics rooms were located on Deck 11 of the ship and were adjacent to each other with a doorway between them. To pass through the doorway, a person had to step up and over the threshold. A five-and-a-half-inch threshold led into the aerobics room, but the step-up on the way out was four inches high.[2] The aerobics room was

---

[1] Carnival notes in its brief that the district court failed to enter a separate final judgment after entering its order granting summary judgment, as required by Federal Rule of Civil Procedure 58(a). But, as Carnival concedes, the absence of a judgment entered as a separate document does not deprive us of appellate jurisdiction. Reynolds v. Golden Corral Corp., 213 F.3d 1344, 1345 (11th Cir. 2000).

[2] Bunch's expert witness testified there was a height difference in the threshold depending on whether a person was entering or exiting the aerobics room, but he did not explain the reason for the difference.

glassed in on three sides.  It had stainless steel baseboards at the bottom of the walls and at the bottom of the threshold at the doorway.  A blue and red patterned carpet covered the aerobics room floor; the stainless steel baseboards reflected an image of the carpet.  The gym floor was tile.

On the morning of July 24, 2017 Bunch exercised in the gym and then walked into the aerobics room for a cycling class.  The door between the rooms was propped open.  Bunch stepped up and over the five-and-a-half-inch threshold to enter the aerobics room with no problem.  Just as the class started, Bunch excused herself to go to the bathroom and told the instructor to continue the class.  Because she had to go back into the gym to get to the bathroom, Bunch exited the aerobics room through the same doorway by which she had entered.  But she did not clear the four-inch threshold.  Her right foot hit it and she fell, injuring her right leg and knee.  She later testified that although she was paying attention to where she was walking, she could not see the threshold because the stainless steel baseboard "reflect[ed] the carpet" and it looked "flush to the floor, like an optical illusion."  A few weeks after Bunch's fall, Carnival installed yellow and black striped tape on the threshold.

The record shows that no other person had tripped on the aerobics room threshold in the five years before Bunch's accident.[3]  But Bunch pointed out that

_____

[3] Carnival searched all reported accidents, claims, and complaints to customer service.

3

seven other passengers had tripped and fallen at different thresholds on other ships with what she describes as "basically identical" layouts as the *Glory*.  The falls on those other ships had all occurred on Deck 10, not at the aerobics room threshold on Deck 11, which is where Bunch had fallen on the *Glory*.  The threshold on Deck 10 on the ships was at the doorway to an enclosed stairwell leading to an outer deck and was covered by a glassed-in dome structure.

Like the aerobics room threshold on Deck 11, the Deck 10 threshold had a stainless steel reflective baseboard.  But it had a height of eight-and-a-half inches, more than "double the height" of the Deck 11 aerobics room's four-inch threshold that Bunch had tripped on.  At the time of Bunch's fall, Carnival had both a posted warning sign at the *Glory*'s Deck 10 threshold and a black and white striped tape on the steel baseboard.  (Carnival had also placed at least three warning signs stating "Watch Your Step, High Threshold" at the Deck 10 thresholds on other ships where passengers fell.)

Bunch filed a negligence action against Carnival based on its alleged failure to warn, failure to remedy, and negligent design of the dangerous condition. Bunch retained an architect and engineering expert, George Melchior.  Melchior testified in his deposition that the aerobics room threshold was "excessively high" and "an obstruction."  He noted that "anything over half an inch, whether it's 1 inch, 4 inches or 8.5 inches, is violative of the standard that's codified by . . .

building codes and in the [] consensus industry standards." He concluded that Carnival had notice of the hazard of raised metal thresholds because of the earlier falls and the warnings it posted at the Deck 10 thresholds. He was of the opinion that the Deck 10 thresholds were substantially similar to the aerobics room threshold on Deck 11 because both were enclosed by glass walls and had stainless steel baseboards, although he conceded that the Deck 10 thresholds were higher.

Carnival moved for summary judgment, contending that there was no evidence that it had actual or constructive knowledge of the dangerous condition. It pointed out that there was no record of any other passenger tripping on the aerobics room threshold in the preceding five years. It argued that the prior falls on the Deck 10 thresholds were not substantially similar because they were "not in the same room, not on the same deck, not on the same ship, and not on the same threshold . . . [and those] thresholds [were] twice the height" of the threshold that Bunch tripped on. Carnival asserted that the consensus industry standards and codes referred to by Melchior were not applicable to the aerobics room threshold and were not proof of notice as a matter of law. Finally, it argued that the condition was open and obvious.

Bunch responded that the earlier falls and warning signs posted at the Deck 10 thresholds were sufficient to show a fact issue about notice because those thresholds were substantially similar to the aerobics room threshold — they were

both raised, reflective metal thresholds.  And she presented a United States Coast Guard incident report about an earlier trip and fall on a raised threshold on a Carnival cruise ship in which the passenger stated that she had "not recogniz[ed] the hazard due to her perception that the threshold area blended in with the deck below."[4]

Bunch conceded that the Deck 10 thresholds were twice as high as those on Deck 11, but she argued that both thresholds exceeded allowable heights according to consensus industry standards.  And those industry standards, "while not conclusive," amounted to some evidence that Carnival had constructive notice that the aerobics room threshold on Deck 11 was a dangerous condition.  She argued that the condition was not open and obvious because it was camouflaged by the reflection of the carpet on the steel baseboards, making it appear as if there were no threshold at all.

The district court granted summary judgment to Carnival on Bunch's negligence claim, rejecting her failure to warn and failure to remedy theories.  The court determined that Bunch had failed to create a genuine issue of material fact about Carnival's actual or constructive notice of the dangerous condition.[5]  It noted

---

[4] It is not clear from the report which threshold or on what deck that fall had occurred.

[5] The court also determined that there was no evidence to support Bunch's negligent design theory, and Bunch does not challenge that ruling on appeal.

that no other passenger had tripped and fallen on the aerobics room threshold on Deck 11, and it concluded that the prior trip and fall incidents on Deck 10 were not substantially similar to Bunch's because those thresholds were significantly higher and were outdoors.

The district court also concluded that the warnings signs posted at the Deck 10 thresholds did not establish that Carnival had notice of the dangerous condition caused by the aerobics room threshold on Deck 11. It pointed out that there were raised thresholds all over the ship and there was no evidence that Carnival had produced any kind of safety video issuing a general warning about the risk of raised thresholds. The court reasoned that evidence of a violation of industry standards alone was insufficient to show notice of the dangerous condition. Because the court granted summary judgment based on Carnival's lack of notice of the dangerous condition, it did not address whether the condition was open and obvious to passengers.

Approximately three weeks after summary judgment was entered, Bunch filed a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e) based on newly discovered evidence.[6] She notified the court that after it entered summary judgment against her, her counsel had deposed a Carnival

---

[6] Bunch also filed a Rule 60(b) motion to set aside the judgment, and the court denied that motion. Bunch does not challenge that ruling on appeal.

7

housekeeping manager in connection with a different lawsuit against Carnival involving a different plaintiff and a different ship. That employee, she asserted, testified that in 2016 the cabin television sets on another class of ship played a video that warned passengers about the risk of raised thresholds.

The district court denied the Rule 59(e) motion, concluding that the housekeeping manager's testimony about a video shown on another class of ship that "may" have generally warned of the risks of raised thresholds did not create an issue of material fact as to whether Carnival had warned *Glory* passengers of those risks. There was no evidence of a direct link between the general warning of raised thresholds and the *Glory*. The court also determined that Bunch had not shown that the evidence from her internet search was unavailable to her during the summary judgment proceedings, and during depositions she could have questioned Carnival representatives about safety videos or any warnings broadcast aboard its ships. She failed to do that.

## II.

Bunch contends that the district court erred by concluding that Carnival had no actual or constructive notice of the dangerous condition. She argues that evidence no one else had tripped on the same threshold was not enough to support the conclusion that Carnival lacked notice it was dangerous. Instead, Bunch argues, three pieces of record evidence show that Carnival did have notice of the

8

danger: 1) the prior trip and falls at the Deck 10 thresholds that, like the aerobics room threshold on Deck 11, involved a stainless steel, reflective baseboard; 2) the warning signs and striped tape at those Deck 10 thresholds; and 3) consensus industry standards that a four-inch threshold was too high.

We review de novo a district court's grant of summary judgment. Watkins v. Ford Motor Co., 190 F.3d 1213, 1216 (11th Cir. 1999). Maritime law governs the liability of a cruise ship for a passenger's trip and fall. Sorrels v. NCL (Bahamas) Ltd., 796 F.3d 1275, 1279 (11th Cir. 2015). "In analyzing a maritime tort case, we rely on general principles of negligence law." Chaparro v. Carnival Corp., 693 F.3d 1333, 1336 (11th Cir. 2012). To prevail on a negligence claim, a plaintiff must show that "(1) the defendant had a duty to protect the plaintiff from a particular injury; (2) the defendant breached that duty; (3) the breach actually and proximately caused the plaintiff's injury; and (4) the plaintiff suffered actual harm." Id.

"Under maritime law, the owner of a ship in navigable waters owes passengers a duty of reasonable care under the circumstances." Sorrels, 796 F.3d at 1279 (quotation marks omitted). That standard requires "as a prerequisite to imposing liability, that the carrier have had actual or constructive notice of the risk-creating condition." Id.; see also Keefe v. Bahama Cruise Line, Inc., 867 F.2d 1318, 1322 (11th Cir. 1989) (same). Because notice is a material element of both

failure to warn and failure to remedy theories of negligence, Carnival's liability "hinges on whether it knew or should have known" of the dangerous condition. Amy v. Carnival Corp., 961 F.3d 1303, 1308–09 (11th Cir. 2020).

The earlier trip and falls at Deck 10 thresholds, and the warnings posted there, are sufficient to show a genuine issue of material fact about Carnival's actual or constructive knowledge of the dangerous condition at the aerobics room threshold on Deck 11. The district court focused on the height and location differences between the Deck 10 and Deck 11 thresholds in concluding that they were not substantially similar, but Bunch's negligence claim was not based solely on an allegation that the height of the aerobics room threshold on Deck 11 was dangerous. Instead, her theory was that the "optical illusion" created by the stainless steel baseboard reflected the flooring and made it appear as if there was no threshold at all. Photographs of the aerobics room threshold taken shortly after Bunch's fall show that the stainless steel baseboard did reflect the carpet. Similarly, photographs of the Deck 10 thresholds show that the steel baseboards, where there is no striped tape, also reflect the surrounding flooring.

Bunch submitted her expert's opinion that Carnival should have been aware of the tripping hazard at raised thresholds with reflective steel baseboards because of the earlier falls at the same type of thresholds on Deck 10 and the warning signs and striped tape Carnival had placed there to make them more visible. The

10

aerobics room threshold on Deck 11 is significantly lower, but if a raised, reflective threshold creates an appearance of a flush walking surface, a reasonable jury could find that would also be true of a raised, reflective threshold that was not as high. Bunch has put forth sufficient evidence that "conditions substantially similar to the occurrence in question [] caused the prior accident." Jones v. Otis Elevator Co., 861 F.2d 655, 661–62 (11th Cir. 1988).

The warning signs and striped tape placed at the Deck 10 thresholds also create an issue of fact as to whether Carnival corrected a problem at those thresholds that was similar to the problem at the aerobics room threshold on Deck 11: a reflection on the steel baseboard that caused an optical illusion and created a dangerous condition. "Evidence that a ship owner has taken corrective action can establish notice of a dangerous or defective condition." Carroll v. Carnival Corp., 955 F.3d 1260, 1265 (11th Cir. 2020); see also Amy, 961 F.3d at 1308–09 (noting that evidence of corrective action on both the cruise ship where the passenger was injured and on other ships "could have carried considerable weight for the jury" about whether the carrier had notice of the dangerous condition). For corrective action to be evidence of notice, "there must also be a connection between the warning and the danger." Id. at 1309 (holding that a cruise ship's warning to passengers to not climb on guard rails was sufficiently connected to the danger of falling over a guard rail). There is here.

11

Not only did Carnival post warning signs at the Deck 10 thresholds on the *Glory* and other ships, it also covered some of those thresholds with black and white striped tape.  Those warnings are sufficiently connected to the danger of tripping and falling over raised, reflective thresholds that create the illusion that the threshold is flush with the floor.  And, as we have discussed, there is sufficient evidence to create a genuine issue of material fact about the substantial similarity of the Deck 10 raised, reflective thresholds and the threshold in the aerobics room on Deck 11.  Viewed in a light most favorable to Bunch, that evidence is enough to withstand summary judgment as to notice.

Carnival contends that, even if there is a fact question about notice, we can still affirm the district court's judgment in its favor because the danger of the threshold was open and obvious.[7]  While it is true that we can "affirm a grant of summary judgment if it is correct for any reason," Acevedo v. First Union Nat. Bank, 357 F.3d 1244, 1248 (11th Cir. 2004), it is not correct that there is no genuine issue of material fact about whether the danger resulting from the reflective threshold was open and obvious.

---

[7] "The open and obvious nature of a dangerous condition negates liability for failure to warn."  Carroll, 955 F.3d at 1267.  It does not negate liability for failure to remedy.  Id. at 1269. If the dangerous condition of the aerobics room threshold were open and obvious, it would bar only Bunch's negligence claim based on failure to warn.

12

"An operator of a cruise ship has a duty to warn only of known dangers that are not open and obvious.  In evaluating whether a danger is open and obvious we are guided — as in general tort law — by the reasonable person standard."  Carroll, 955 F.3d at 1264 (quotation marks omitted).

Viewed in a light most favorable to Bunch, the record supports an inference that a reasonable person approaching the aerobics room threshold would not have observed the step up because the steel baseboard reflected the carpet, making it appear as if there were no threshold at all.  As we have mentioned, Bunch testified that she was paying attention to where she was walking, but she could not see the threshold because the stainless steel "reflect[ed] the carpet" and it looked "flush to the floor, like an optical illusion."  Photographs of the threshold taken shortly after Bunch's fall show that reflection.

Because there is a genuine issue of material fact about Carnival having actual or constructive notice of the dangerous condition and also about whether any danger was open and obvious, the district court erred in granting summary judgment to Carnival on Bunch's negligence claim based on failure to warn and failure to remedy.

**REVERSED AND REMANDED.** [8]

---

[8] Because we reverse the grant of summary judgment, we do not address the denial of Bunch's Rule 59(e) motion.

13